COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Clements and Felton
Argued at Chesapeake, Virginia


PAUL DONALD WASHINGTON

v.      Record No. 3211-02-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JEAN HARRISON CLEMENTS
JUNE 8, 2004


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Robert W. Curran, Judge

Theophlise Twitty (Jones and Twitty, on brief), for appellant.

Paul C. Galanides, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Paul Donald Washington was convicted in a bench trial of possessing marijuana with

intent to distribute, in violation of Code § 18.2-248.1(a)(2), and of transporting more than five

pounds of marijuana into the Commonwealth with intent to distribute, in violation of Code

§ 18.2-248.01.  On appeal, Washington contends the trial court erred (1) in denying his motion to

suppress the statement he made to police and (2) in finding the evidence sufficient to support his

conviction on the transporting charge.  Finding no error, we affirm the convictions.

I.  BACKGROUND

At trial, Washington and the Commonwealth stipulated to the following facts:  On

November 7, 2001, in the City of Newport News, a trained drug-detection dog alerted on a

suspicious postal parcel that was ostensibly en route to "J & G Electronics," with a delivery

address at a store in Newport News called Mail Boxes Etc.  After a search warrant was obtained,

the parcel was delivered to the Mail Boxes Etc. store. Subsequent analysis proved that the parcel contained over twelve pounds of marijuana.

Later that day, Detective Fowler of the Newport News Police Department, acting undercover as a clerk at Mail Boxes Etc., observed Washington enter the business, talking on a cell phone. Washington approached the counter and requested the parcel by asking for "box 158." Detective Fowler retrieved the parcel and presented it to Washington with the label facing up and toward Washington so he could read it. Washington asked if Fowler needed his signature for the parcel. When Fowler stated that he did not, Washington took the parcel and left the Mail Boxes Etc. store.

After leaving the store, Washington was arrested by Virginia State Police Special Agent William Stooks. Washington had an identification card bearing a false name and fictitious social security number. When questioned by Agent Stooks, Washington admitted that "J & G Electronics" was a fictional company and that he had "just recently opened" the mail box at Mail Boxes Etc., "as instructed by" a man known to him only as "P," to receive "the package of marijuana." Washington further told Stooks that "P" had promised to pay him $1,000 to receive the parcel and keep it until "P" "picked it up." Washington stated that "P" "supposedly" lived in Martinsburg, West Virginia, but he did not know his address. Washington also stated that "P" telephoned him from California that morning to say that the parcel would arrive that day and that he would call Washington that weekend to arrange to pick up the parcel from him.

Prior to trial, Washington moved to suppress his statement to Agent Stooks, arguing that it was given both involuntarily and in violation of his Miranda rights. At the suppression hearing, Stooks testified that, upon placing Washington under arrest, he advised him of the charges he faced and transported him to the Newport News Police Department. Stooks further

testified that, once inside an interview room at the police station, he advised Washington of his Miranda rights, including his "right to an attorney" and his "right to remain silent." Stooks further advised Washington that "[a]nything he said could and [would] be used against him in a court of law." Washington informed the officer that he understood his rights and was willing to give a statement "without his attorney being present." Washington did not sign a waiver form, and the interview was not recorded.

Stooks also testified that, after advising Washington of his Miranda rights, he told Washington that, "if he wanted to cooperate as an informant that it would be run by the Commonwealth['s] Attorney and any cooperation . . . would [surely] be given favorable consideration." Stooks testified he did not make any threats or promises to Washington, did not promise Washington any specific consideration from the Commonwealth's Attorney's office in exchange for his cooperation, and never told him that he "could get rid of any charges that he had if he cooperated."

Washington testified that, while transporting him to the police station, Stooks told him he could "make it all disappear" and that he could "talk to the Commonwealth['s] Attorney and get [him] out of this" if he cooperated. Washington further testified Stooks told him that, if he did not cooperate, he would make sure Washington's bond was so high he would not be able to get out of jail "until after the court date." Washington also testified that he gave his statement to Stooks when they reached the police station because he "wanted to get out." He further testified that Stooks later appeared before the magistrate and helped him obtain a bond of $20,000. According to Washington, Stooks did not advise him of his Miranda rights until after he had given his statement. Washington, who was thirty years old and had completed one year of

college, admitted that he had previously been convicted of three felonies, one of which involved lying, stealing, or cheating.

Arguing Washington was not a credible witness, the Commonwealth asked the court to accept Agent Stooks's testimony and deny the motion. The trial judge denied the motion to suppress, stating that Washington was well experienced in dealing with the police and that nothing "happened in this particular case that caused this not to be a voluntary statement."

Following the presentation of the stipulated evidence at trial, Washington moved to strike the charge of transporting drugs into the Commonwealth, arguing the evidence was insufficient to prove that he, as the recipient of the package shipped into the Commonwealth by someone else, "transported" the marijuana into the Commonwealth. Washington also argued that Code § 18.2-248.01 "was not designed" to authorize his conviction as a principal in the second degree. The Commonwealth argued Washington aided and abetted "P" in transporting the marijuana into Virginia and was, therefore, a principal in the second degree. Concluding the scope of Code § 18.2-248.01 was not intended to be limited to "the person who mailed" the drugs into the Commonwealth, the trial court denied Washington's motion to strike.

The court subsequently convicted Washington of possessing the marijuana with intent to distribute, in violation of Code § 18.2-248.1(a)(2), and of transporting the marijuana into the Commonwealth with intent to distribute, in violation of Code § 18.2-248.01. This appeal followed.

## II. MOTION TO SUPPRESS

On appeal, Washington maintains his incriminating statement to Agent Stooks regarding the package of marijuana sent to him from outside Virginia was not made voluntarily and was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), because Stooks did not advise

him of his rights prior to questioning. Thus, he contends the trial court erred in denying his motion to suppress the statement. We disagree.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that the ruling . . . constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). We consider the evidence in the light most favorable to the Commonwealth. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "'In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988)).

In addition, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee, 25 Va. App. at 198, 487 S.E.2d at 261. However, "we review *de novo* the trial court's application of defined legal standards to the particular facts of a case." Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475-76 (1997). We are further mindful that "[c]onflicts in evidence present factual questions that are to be resolved by the trial court," which "'must evaluate the credibility of the witnesses, resolve the conflicts in their testimony and weigh the evidence as a whole.'" Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992) (quoting Albert v. Commonwealth, 2 Va. App. 734, 738, 347 S.E.2d 534, 536 (1986)). "'The credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses.'" Collins v. Commonwealth, 13 Va. App. 177, 179, 409 S.E.2d 175, 176 (1991)

(quoting Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Washington claims he was not informed of his Miranda rights before he gave his statement to Agent Stooks. It is well established that "'[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination,' commonly known as Miranda warnings." Timbers v. Commonwealth, 28 Va. App. 187, 194, 503 S.E.2d 233, 236 (1998) (quoting Miranda, 384 U.S. at 444). Indeed, "[f]ailure to give Miranda warnings prior to custodial interrogation requires suppression of any illegally obtained statements." Blain v. Commonwealth, 7 Va. App. 10, 13, 371 S.E.2d 838, 840 (1998).

After hearing the conflicting testimony of Washington and Agent Stooks regarding the timing of the Miranda warnings and observing their demeanor, the trial judge denied Washington's motion to suppress his statement to Stooks. In resolving the matter in the Commonwealth's favor, the trial judge obviously found that Stooks advised Washington of his Miranda rights before taking his statement.[1] Credible evidence supports this factual finding. Stooks testified that, upon entering an interview room at the police station, he read Washington

---

[1] Washington argues the trial judge erred in failing to make a specific factual finding resolving the discrepancy between Stooks's testimony and Washington's testimony. Our review of the record reveals, however, that Washington did not request a specific factual finding, object to the absence of a specific factual finding, or otherwise make this argument to the trial court. Thus, we will not consider it for the first time on appeal. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (holding that we will not address an issue, even a constitutional claim, raised for the first time on appeal); Rule 5A:18.

his Miranda rights before taking Washington's statement. Stooks further testified that Washington then informed the officer he was willing to give a statement "without his attorney being present." The trial court could properly conclude from this evidence that Stooks gave the Miranda warnings prior to the custodial interrogation. The trial court was also entitled to refuse to accept Washington's self-serving testimony and to infer that he was lying to conceal his guilt. Thus, we will not reverse the trial court's finding.

Washington further claims that, even if he waived his Miranda rights, he did so involuntarily because his statement was induced by a promise of leniency. He argues that his will was overborne when Agent Stooks promised him that his cooperation with the police "would be run by the Commonwealth['s] Attorney and . . . would [surely] be given favorable consideration."

"The Commonwealth has the burden to prove, by a preponderance of the evidence, that a defendant's confession was freely and voluntarily given." Bottenfield v. Commonwealth, 25 Va. App. 316, 323, 487 S.E.2d 883, 886 (1997). On appeal, the issue of voluntariness is a question of law requiring an independent determination. E.g., Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992). "In assessing voluntariness, [we] must determine whether 'the statement is the "product of an essentially free and unconstrained choice by its maker," or . . . whether the maker's will "has been overborne and his capacity for self-determination critically impaired."'" Roberts v. Commonwealth, 18 Va. App. 554, 557, 445 S.E.2d 709, 711 (1994) (quoting Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973))). To make that determination, we must look to the "'totality of all the surrounding circumstances,'" Commonwealth v. Peterson, 15 Va. App. 486, 488, 424 S.E.2d 722, 723 (1992) (quoting Gray v.

Commonwealth, 233 Va. 313, 324, 356 S.E.2d 157, 163 (1987)), including "the defendant's age, intelligence, mental and physical condition, background and experience with the criminal justice system, the conduct of the police, and the circumstances of the interview." Bottenfield, 25 Va. App. at 323, 487 S.E.2d at 886. "[E]vidence of coercive police activity 'is a necessary predicate to the finding that a confession is not "voluntary."'" Peterson, 15 Va. App. at 488, 424 S.E.2d at 723 (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)). In other words, "*some level of coercive police activity must occur before a statement or confession can be said to be involuntary.*" Id. In considering the conduct of the police, we "must consider the interrogation techniques employed, including evidence of trickery and deceit, psychological pressure, threats or promises of leniency, and duration and circumstances of the interrogation." Terrell v. Commonwealth, 12 Va. App. 285, 291, 403 S.E.2d 387, 390 (1991).

Our independent review of the totality of the circumstances surrounding Washington's statement to Agent Stooks regarding the parcel of marijuana he retrieved convinces us that Stooks's statement to Washington that Washington's cooperation "would [surely] be given favorable consideration" by the Commonwealth's Attorney's office did not cause Washington's will to be overborne and, thus, did not render Washington's statement involuntary.

Prior to taking Washington's statement, Stooks advised Washington of his Miranda rights, and Washington told the officer he understood his rights. When Washington gave his statement, he was at least twenty-nine years old, had completed one year of college, and, as the trial court specifically noted, was well experienced in dealing with the police, having previously been convicted of three felonies. Neither his mental condition nor his physical condition was impaired at the time. He was not denied any physical comforts, mistreated, threatened, intimidated, tricked, or deceived by the police before giving his statement.

Washington plainly knew that he had the right to remain silent and to have a lawyer present and that what he said to Stooks could be used against him at trial.  Washington also had enough experience with the criminal justice system to know that Stooks's statement that Washington's cooperation "would [surely] be given favorable consideration" by the Commonwealth's Attorney's office did not constitute an actual promise of leniency in exchange for waiving his <u>Miranda</u> rights.  Stooks's statement merely informed Washington that the Commonwealth's Attorney's office would be made aware of any help that he chose to give and that the Commonwealth's Attorney's office would, as a matter of common sense, look more favorably upon him if he cooperated than if he did not.  Indeed, Stooks testified unequivocally that he did not promise Washington any specific consideration from the Commonwealth's Attorney's office in exchange for his cooperation and never told him that he "could get rid of any charges that he had if he cooperated."  Moreover, Stooks did not specify what "favorable consideration" meant, nor did he claim to have the power to actually affect the decision of the Commonwealth's Attorney's office regarding the charges Washington would ultimately face.  Consequently, in light of Washington's previous experience with the criminal justice system, Stooks's statement to Washington did not, by itself, amount to coercive police activity.

We conclude, therefore, that Agent Stooks's statement did not impair Washington's capacity to determine for himself whether to waive his rights to remain silent and have an attorney present.  Hence, we hold, as did the trial court, that Washington's statement was the product of an essentially free and unconstrained choice and was, thus, voluntarily given.

Accordingly, we affirm the judgment of the trial court.

III. SUFFICIENCY OF THE EVIDENCE

Washington concedes that the parcel containing more than five pounds of marijuana that he retrieved at the Mail Boxes, Etc. store in Newport News was sent to him by "P" from outside Virginia. He further concedes that, had he sent the package to himself, his conviction would be proper under Code § 18.2-248.01. See Green v. Commonwealth, 32 Va. App. 438, 449, 528 S.E.2d 187, 192 (2000) (noting that evidence establishing defendant mailed narcotics from New York to his residence in Virginia "satisfied the 'transport by any means' element of Code § 18.2-248.01"). He contends, however, that, because the stipulated evidence presented at trial showed he did not mail the parcel himself, the evidence was insufficient, as a matter of law, to sustain his conviction of transporting more than five pounds of marijuana into the Commonwealth with intent to distribute, in violation of Code § 18.2-248.01. Specifically, he argues the evidence does not support his conviction as a principal in the first degree because, as solely the recipient of a parcel shipped into the Commonwealth by someone else, he was not "directly or personally responsible for causing the [marijuana] to enter the Commonwealth." Thus, he maintains he may not be found to have "transported" the marijuana into the Commonwealth. He also argues he may not be convicted as a principal in the second degree because Code § 18.2-248.01 "was not designed" to authorize a conviction for one who aids and abets a principal in the first degree.

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444, (1987). "'In so doing, we must . . . regard as true all the credible evidence favorable to the

Commonwealth and all fair inferences that may be drawn therefrom.'" Watkins, 26 Va. App. at 348, 494 S.E.2d at 866 (quoting Cirios, 7 Va. App. at 295, 373 S.E.2d at 165).

Code § 18.2-248.01 provides, in pertinent part, that "it is unlawful for any person to transport by any means . . . five or more pounds of marijuana into the Commonwealth with intent to sell or distribute such substance." The statute also expressly provides that "[a] violation of this section shall constitute a separate and distinct felony." Code § 18.2-248.01. "The plain and obvious meaning of [Code § 18.2-248.01] is to prohibit the . . . transportation of illegal substances [into] Virginia by a person whose intent is to distribute" those substances. Seke v. Commonwealth, 24 Va. App. 318, 323, 482 S.E.2d 88, 90 (1997).

"Generally, in the case of every felony, a principal in the second degree may be indicted, tried, convicted, and punished in all respects as if a principal in the first degree." Taylor v. Commonwealth, 260 Va. 683, 687-88, 537 S.E.2d 592, 594 (2000) (citing Code § 18.2-18); see also Adkins v. Commonwealth, 175 Va. 590, 599, 9 S.E.2d 349, 353 (1940) ("'When a statute creates a new felony, whether out of what was before innocent, or was a misdemeanor, those who are aiding one who personally commits it are principals.'" (quoting Bishop, Statutory Crimes, 2nd Ed., §§ 135, 139, and cases cited therein)). Thus, a person who participates as a principal in the second degree in transporting into the Commonwealth with intent to distribute any of the controlled substances listed in Code § 18.2-248.01 may be convicted under that statute as if a principal in the first degree.

To hold the accused accountable as a principal in the second degree, the Commonwealth must prove the accused was "present, aiding and abetting, by helping some way in the commission of the crime." Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986). It must be shown that the accused shared the criminal intent of the principal or

- 11 -

"committed some overt act in furtherance of the offense." Sutton v. Commonwealth, 228 Va. 654, 666, 324 S.E.2d 665, 671 (1985).

Actual presence at the commission of the crime, however, is not required to convict the accused as a principal in the second degree. The accused need only be constructively present at the crime's commission. See id. As the Supreme Court stated in Sutton:

> "'[T]he *presence* need not be a strict, actual, immediate presence, such a presence as would make [the defendant] an eye or ear witness of what passes, but may be a constructive presence. So that if several persons set out together . . . upon one common design, be it murder or other felony, or for any other purpose unlawful in itself, and each takes the part assigned him; . . . they are all, provided the fact be committed, in the eyes of the law, present at it . . . .'"

Id. at 667, 324 S.E.2d at 672 (second alteration in original) (quoting Dull v. Commonwealth, 66 Va. (25 Gratt.) 965, 977 (1875) (emphasis added) (quoting 1 Russell on Crimes 27 (3d ed. 1845))).

Applying this principle to the instant case, we conclude that, in picking up the package of marijuana at the Mail Boxes Etc. store, Washington was constructively present at the crime's commission. In interpreting the meaning of the word "transportation" in a case involving the illegal transportation of alcohol by automobile, the Supreme Court held that "transportation begins when the ardent spirits are loaded into the car for illegal transportation and ends only when they are removed therefrom. *The loading and unloading are necessarily a part of the transportation.*" Chrysler Roadster v. Commonwealth, 152 Va. 508, 514, 147 S.E. 243, 244 (1929) (emphasis added). Applying this interpretation to the illegal transportation of controlled substances into Virginia by mail, it follows that Washington's act of accepting delivery of the parcel of marijuana was part of the parcel's transportation. Thus, while he was not actually present at the commission of the crime when the parcel passed into Virginia, see Seke, 24 Va. App. at 325, 482 S.E.2d at 91 (holding that the commission of the offense set forth in Code § 18.2-248.01 occurs

when the illegal substance is transported across the border into Virginia), the evidence establishes that he was constructively present.

The evidence further establishes that, in renting the mailbox at the Mail Boxes Etc. store, pursuant to the instructions of "P," for the purpose of receiving the package and in retrieving the package when it arrived at the store from "P," Washington committed overt acts in furtherance of the offense of transporting the marijuana into the Commonwealth. Thus, although he did not mail the package of marijuana himself, he clearly aided and abetted "P" in the commission of the crime.

Thus, the trial court could reasonably conclude from the evidence presented that Washington participated as a principal in the second degree in transporting into the Commonwealth with intent to distribute more than five pounds of marijuana, in violation of Code § 18.2-248.01. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt the elements of the offense.[2]

IV. CONCLUSION

For these reasons, we affirm Washington's convictions.

Affirmed.

---

[2] Having determined that the evidence was sufficient beyond a reasonable doubt to support Washington's conviction under Code § 18.2-248.01 as a principal in the second degree, we need not address Washington's argument that the evidence was insufficient to support his conviction as a principal in the first degree.