COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Haley and Beales
Argued at Alexandria, Virginia


RONALD MICHAEL YOUNG, JR.

                                                MEMORANDUM OPINION* BY
v.        Record No. 2143-07-4                  JUDGE JAMES W. HALEY, JR.
                                                     OCTOBER 28, 2008
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Jane Marum Roush, Judge

            Lavonda N. Graham-Williams (Jerri L. Fuller; Law Offices of
            Patrick N. Anderson, P.C., on briefs), for appellant.

            Josephine F. Whalen, Assistant Attorney General (Robert F.
            McDonnell, Attorney General; Karri B. Atwood, Assistant Attorney
            General, on brief), for appellee.


                                I.  INTRODUCTION

        Convicted by a jury of robbery in Fairfax County, Ronald Michael Young maintains his

inculpatory statements made to police officers should be suppressed.  Specifically, he argues that

his admittedly mistaken belief that the interview resulted from plea negotiations initiated by his

counsel, involving a different robbery in Prince William County, coupled with the failure of the

police to affirmatively advise him of his error, rendered his statements involuntary.  We disagree

and affirm his conviction.

                                II.  BACKGROUND

        A summary begins with the following unchallenged facts.  Young does not dispute that

he signed a written waiver of his Miranda rights, that he was orally advised of those rights, that

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

he understood those rights, that he never requested an attorney be present during his interview, that he never sought to terminate the interview, that his statements were made free of any physical or psychological coercion, and that the police offered no inducement or promises in exchange for his statement.

That being said, the interview evolved as follows.

Young was in the Prince William County jail on charges arising in that county. Jennifer Beth Zary had been appointed to represent him on those charges. On the afternoon of April 21, 2006, she visited him in jail. He told her he had information about a friend of his who had participated in various bank robberies. He did not tell her he had participated in any of these robberies nor where they had occurred. They agreed she would approach the Prince William Commonwealth's Attorney's office to see "if we could use his information in order to benefit himself." Ms. Zary spoke with the Commonwealth's Attorney's office and also contacted the Prince William Police Department, but was at that time unable to ascertain what Prince William police officer was handling Young's case. She never spoke with any member of the Fairfax Commonwealth's Attorney's office or Fairfax police.

Detective Gary Bailey of the Fairfax County Police Department was investigating two bank robberies, which had occurred in that county. He received a Crime Stoppers call stating that two men, Young and one Rogers, were the robbers and that they were incarcerated in the Prince William County jail. A bank surveillance photo matched one of Rogers. By coincidence, on April 21, 2006, at about 9:30 p.m., Bailey and Investigator Kenneth Fognano of the Loudoun County Sheriff's Department went to the Prince William County jail to interview Young.[1] At

---

[1] Special Agent Bill Rodiger of the FBI accompanied the detectives but apparently did not participate in the interview.

that time there were no Fairfax charges pending against Young. As noted above, all <u>Miranda</u> formalities were met.

Even though Detective Bailey identified himself as a Fairfax County police officer investigating Fairfax County robberies, Young mistakenly thought the officers were there as a result of his Prince William County defense strategy developed with Ms. Zary.

Young testified:

> Q. When they came into the room, what was your belief about why they were there?
>
> A. My belief was they were there because I had a conversation earlier that day with my Manassas lawyer.
>
>     *     *     *     *     *     *     *
>
> Q. When you say you started the conversation out, is that when they immediately came into the room and started talking to you about it?
>
> A. Right. As they were introducing themselves, I told them that it was my belief I knew why they were there, even though I was -- in the end I was wrong.
>
> Q. When did you come to find out that you were wrong?
>
> A. It could be a week later.
>
> Q. Is that when you were charged?
>
> A. Yeah. Well, even then I still didn't believe I was wrong. . . . I didn't know any better until my lawyer actually stated that she never sent the police over and I'm like, you're kidding me.

Furthermore, in response to a question that he was "just being cooperative because you thought that was what you needed to do," Young answered "Yes."

During the interview, Young made statements concerning his involvement as a driver for Rogers in the Fairfax robberies.

- 3 -

Detective Bailey testified on cross-examination: "Q. Anything about having conversation with his attorney? A. No. I think initially . . . is him indicating that whether or not we had spoken to a lawyer and the answer was, 'No.' There wasn't any discussion about it further."[2]

Detective Fognano testified:

> Q. [Y]ou said earlier . . . that you believed that the defendant was under the mistaken impression that his attorney had sent you. Did you ever tell the defendant that you were coming at the request of his attorney?
>
> A. I didn't emphasize either way.
>
> Q. But you never said anything affirmative, like, along the lines of, yes, your attorney sent me?
>
> A. No, ma'am.
>
> Q. Did you ever hear Detective Bailey or Special Agent Rodiger say anything affirmative concerning Mr. Young's attorney sending them to speak with him?
>
> A. No . . . . Neither of us took advantage and said that his attorney did send us. We didn't even know who his attorney then was.[3]
>
>        \*      \*      \*      \*      \*      \*      \*
>
> Q. You also didn't say that we're not sent from the attorney; correct?
>
> A. That's correct.

---

[2] Detective Bailey gave this testimony during a suppression hearing. On brief, Young notes that at trial Bailey testified that when Young asked if Bailey and the others had spoken with his attorney, the officers "just kind of nodded our heads and proceeded on." Young did not renew his motion to suppress at trial. Accordingly, we consider only the evidence adduced at the suppression hearing. See United States v. McRae, 156 F.3d 708, 711 (6th Cir. 1998); United States v. Quintanilla, 25 F.3d 694, 698 (8th Cir. 1994); United States v. Hicks, 978 F.2d 722, 724 (D.C. Cir. 1992); see also 6 Wayne R. LaFave, Search and Seizure § 11.1(b), at 18 (4th ed. 2004).

[3] As noted, since there were no then pending Fairfax County charges, Young did not have an attorney representing him on any such charges.

In sum, even though the detectives may have surmised Young thought his attorney had sent them, they did nothing to confirm or disaffirm Young's belief. And it is this failure to disaffirm, Young maintains, that renders his statements involuntary.

## III. ANALYSIS

"On appeal from a denial of a suppression motion, we examine the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Barkley v. Commonwealth, 39 Va. App. 682, 687, 576 S.E.2d 234, 236 (2003). Young has the burden of demonstrating reversible error. Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002).

The test of whether waiver was voluntary "'is whether the statement is the product of an essentially free and unconstrained choice by its maker, or . . . whether the maker's will has been overborne and his capacity for self-determination critically impaired.'" Cary v. Commonwealth, 40 Va. App. 480, 487, 579 S.E.2d 691, 694 (2003) (quoting Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984)) (internal quotation marks omitted). "[E]vidence of coercive police activity 'is a necessary predicate to the finding that a confession is not voluntary.'" Commonwealth v. Peterson, 15 Va. App. 486, 488, 424 S.E.2d 722, 723 (1992) (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)) (internal quotation marks omitted). Further, as the Virginia Supreme Court held in Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992): "[T]he inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled to a presumption of correctness." "'[T]his factual finding will not be disturbed on appeal unless plainly wrong.'" Id. (quoting Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 430 (1985)).

In <u>Harrison</u>, 244 Va. at 578, 423 S.E.2d at 161, police officers told Harrison that providing information against co-conspirators would help him. Citing <u>Rodgers v. Commonwealth</u>, 227 Va. 605, 616, 318 S.E.2d 298, 304 (1984), the Virginia Supreme Court held that this inducement did not render his subsequent statements involuntary. <u>Harrison</u>, 244 Va. at 584, 318 S.E.2d at 164-65.

In <u>Washington v. Commonwealth</u>, 43 Va. App. 291, 303-04, 597 S.E.2d 256, 262 (2004), this Court applied the same reasoning. The police had told the defendant the prosecution would look favorably on his cooperation. <u>Id.</u> We concluded that the defendant "plainly knew that he had the right to remain silent and to have a lawyer present and that what he said to [police] could be used against him at trial." <u>Id.</u> at 304, 597 S.E.2d at 262.

In this case, there is no evidence of coercion and, unlike <u>Harrison</u> or <u>Washington</u>, there were no inducements or promises whatsoever made by the officers to Young in exchange for his statement. Rather, those statements resulted from Young's mistaken belief that such inducements or promises had or were to be made.

In <u>Roach v. Commonwealth</u>, 251 Va. 324, 340, 486 S.E.2d 98, 107 (1996), the Virginia Supreme Court affirmed the trial court and wrote:

> Roach argues that the trial court erred in refusing to suppress his confession as being involuntary . . . . Roach asserts that his waiver of <u>Miranda</u> rights was "questionable," and that he made his statements based upon the mistaken belief that he would receive the benefit of a lesser penalty in exchange for admitting that he had shot Hughes.

In the instant case, Young admitted that "in the end I was wrong" in his belief that the police officers had arrived to interview him as a result of his Prince William County attorney's

efforts.  It was his "mistaken belief," not any coercive activity by those officers, which led to his statements.[4]  Accordingly, those statements were voluntarily given.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the trial court.

Affirmed.

---

[4] Young's history with law enforcement lends additional support to the voluntary nature of his statements.  During the sentencing phase of the trial, the Commonwealth presented evidence of prior convictions for armed bank robbery and petit larceny.  A suspect's experience with law enforcement may weigh in favor of finding a voluntary, knowing, and intelligent waiver.  Giles v. Commonwealth, 28 Va. App. 527, 536, 507 S.E.2d 102, 107 (1998).