COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Alston
Argued at Richmond, Virginia


DANTE LAMONT LEWIS

MEMORANDUM OPINION[*] BY
v.      Record No. 0894-08-2                    JUDGE WILLIAM G. PETTY
                                                AUGUST 11, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

James L. McLemore, IV, for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General
(William C. Mims, Attorney General, on brief), for appellee.


On February 11, 2008, Lewis was convicted of aggravated malicious wounding,

attempted murder, attempted robbery, use of a firearm in the commission or attempted

commission of robbery, use of a firearm in the commission of aggravated malicious wounding,

and possession of a firearm after being previously convicted of a felony.  Lewis was sentenced to

an aggregate forty-five years with fifteen years suspended.  On appeal, Lewis argues that the trial

court erred in denying his motion to suppress statements made during a police interrogation

because he claims that he did not knowingly and intelligently waive his Fifth Amendment

privilege against self-incrimination.  In addition, Lewis argues that the trial court erred in

denying his motion to suppress because his confession was not freely and voluntarily given.  For

the following reasons, we disagree and affirm his convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the prevailing party below, the Commonwealth, Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003), and we grant to that party all fair inferences flowing therefrom. Coleman v. Commonwealth, 52 Va. App. 19, 21, 660 S.E.2d 687, 688 (2008).

Danny Teodorescu was employed by Mobile Ice Cream Corporation, and he drove an ice cream van that was equipped to "sell[] ice cream on the street." On October 7, 2007, around 4:00 p.m., while Teodorescu was selling ice cream, two men approached the van. One stopped at the front of the van, and the other approached the rear passenger side window and requested ice cream. As Teodorescu leaned down into the freezer he heard the man at the window say: "[g]ive me all your money." Teodorescu ignored the comment and continued to get the ice cream. Then, while his head was still in the freezer, the van started to "shake like an earthquake." Teodorescu stood up and saw the man who stopped at the front of the van enter through the driver door and attempt to take Teodorescu's wallet, cell phone, and iPod, which he kept on the dashboard. Teodorescu ran to the front of the van and told the man to "get out" and pushed the man away very easily. The man got out of the van, and Teodorescu locked the door and rolled up the window. When Teodorescu turned around, the man at the window held a black gun inside the window, aimed, and shot Teodorescu. Both men ran away without taking anything from Teodorescu.

Officers of the Chesterfield County Police Department arrested Lewis for another, unrelated, offense. Because Lewis was a suspect in the ice cream truck incident, Chesterfield notified the Richmond Police Department that Lewis was in custody. Chesterfield County Police Detective Burgess initiated an interview with Lewis and engaged in the following dialogue:

Burgess: Look we want to talk to you about a lot of things, different things, different people and that kind of thing okay.

Lewis: Um hum.

Burgess: And I know you want to talk to me you told me you did

Lewis: Um hum.

Burgess: but I gotta tell you what your rights are. Have you been told your rights in the past, you ever been arrested and charged?

Lewis: Yes sir.

Burgess: So you – how far you go in school?

Lewis: Um 10th grade but I was in a GED program.

Burgess: Okay. So you're not drunk or high or nothing now?

Lewis: Um um.

Burgess: Okay. Let me go over these real quick. You understand you have the right to remain silent. Anything you say can be used against you in a court of law. You have a right to a lawyer and have him present while you're being questioned. If you can't afford a lawyer, hire a lawyer, one will be appointed to you to represent you free of charge prior to any questioning. You understand your rights?

Lewis: Um hum.

Burgess: Have you ever . . . You been told these before?

Lewis: Um hum.

Burgess: You have any questions about it?

Lewis: No sir.

Detective Burgess interviewed Lewis for approximately twenty-five minutes. A couple of minutes after Detective Burgess finished his interview, Richmond Police Detective Byrd

entered the interview room and started questioning Lewis about the robbery of Danny Teodorescu. Detective Byrd asked Lewis if he wanted to talk, and Lewis replied, "Um hum." During the conversation between Lewis and Detective Byrd, Lewis confessed to the ice cream truck robbery and accurately recounted the details.

Lewis moved to suppress his statements from his interview with Detective Byrd because he claimed they violated his Fifth Amendment privilege against self-incrimination. Lewis' mother testified at the suppression hearing that Lewis had been diagnosed with ADHD, had learning problems, and that someone in the juvenile justice system had previously said that he was "borderline mentally retarded." Nevertheless, she admitted that Lewis was familiar with the criminal justice system and that he had legal representation in the past. She further conceded that Lewis had been declared competent to stand trial after a competency evaluation in the juvenile court.

The trial judge denied Lewis' motion to suppress because Lewis knowingly, intelligently, and voluntarily waived his Fifth Amendment privilege against self-incrimination. While the trial judge never specifically stated that the confession was voluntary, the court found that the detectives did not "berate him in any way. They [did not] do psychological tactics that [would] overbear his free will."

At trial, the assistant Commonwealth's attorney relied heavily on Lewis' confession and presented corroborating circumstances that evidenced the fact that Lewis actually committed the crimes for which he was charged. Lewis, however, testified that another person committed the crimes for which he was charged and told him about all the details. When asked about his Miranda waiver, he stated that he did not believe that his statements to Detective Byrd could be used against him in court because Detective Byrd did not read him his Miranda rights.

The trial court convicted Lewis of aggravated malicious wounding, attempted murder, attempted robbery, use of a firearm in the commission or attempted commission of robbery, use of a firearm in the commission of aggravated malicious wounding, and possession of a firearm after being previously convicted of a felony. This appeal followed.

## II. ANALYSIS

In reviewing a trial court's denial of a motion to suppress, the burden is on the appellant to show that the denial of his motion was reversible error. McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545 (2001). "On appeal of the denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and at trial . . . ." Dodd v. Commonwealth, 50 Va. App. 301, 306, 649 S.E.2d 222, 224 (2007) (citing DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987)).

At the trial court level, the Commonwealth bears the burden of proving, by a preponderance of the evidence, "both that the accused knowingly, intelligently and voluntarily waived his Miranda rights and that the confession itself was voluntary." Rodriguez v. Commonweath, 40 Va. App. 144, 155, 578 S.E.2d 78, 83 (2003). On appeal, whether the waiver was knowing and intelligent is a question of fact that "will not be disturbed . . . unless plainly wrong" or without evidence to support it. Id. at 156, 578 S.E.2d at 83. On the other hand, whether the confession was voluntary is "ultimately a legal rather than factual question, but subsidiary factual decisions are entitled to a presumption of correctness." Id.

### A. Knowing and Intelligent Waiver

The Fifth Amendment to our United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege has ancient roots and is "the essential mainstay of our adversarial system." Miranda v. Arizona, 384 U.S. 436, 458, 460 (1966). The United States Supreme Court in Miranda held that

the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination . . . . [U]nless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

Id. at 444.

When it comes to a waiver of a Fifth Amendment privilege, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Id. at 474-75. A waiver is knowing and intelligent when it is made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Rodriguez, 40 Va. App. at 156, 578 S.E.2d at 83.

Lewis claims on appeal that the Commonwealth failed to meet its burden to prove that his waiver was knowing and intelligent. In support, Lewis argues that he was nineteen years old and had only finished the ninth grade, he is unable to understand things that were explained to him, his mother heard someone in the juvenile system say once that he was "borderline mentally retarded," he suffered from a learning disability, and he had been treated by psychiatrist. Further, Lewis claims that because he only thought that this crime would carry five to ten years' incarceration proves that his waiver was not a product of a rational choice based on an appreciation of the consequences. Because of his young age, mental infirmities, and apparent miscalculation of his potential sentence, Lewis concludes that his waiver was not knowing and intelligent.

The trial court must look to the totality of the circumstances including the defendant's age, education, experience, background, intelligence, and previous exposure to Miranda warnings. Id. at 157, 578 S.E.2d at 83-84. Our Supreme Court has stated that "[a]n individual's repeated exposure to Miranda warnings may weigh in favor of concluding that the individual knowingly and intelligently waived those rights." Id. at 157, 578 S.E.2d at 84 (citing Correll v. Commonwealth, 232 Va. 454, 464, 352 S.E.2d 352, 358 (1987)).

In this case, at the suppression hearing, the trial judge noted that, after watching the videotaped interview, Lewis was "engaged." His conversation with Detective Byrd indicated that Lewis had "an active mind of looking at what is going on, questions being asked and wanting some information." The trial judge considered the following facts: Lewis was nineteen years old at the time of the offense which makes him an adult; he completed ten grade levels and had pursued a GED; he was not intoxicated by alcohol or any other substance; he had a history of significant charges and prior experience with the criminal justice system; he had an intelligent conversation with both detectives; and there was no coercion by law enforcement. After analyzing all of these facts, the trial court concluded, as a matter of fact, that Lewis' waiver was knowing and intelligent.

In addition to those circumstances that the trial court considered at the suppression hearing, we also consider the evidence adduced at trial. Dodd, 50 Va. App. at 306, 649 S.E.2d at 224. At trial, Lewis admitted that he did not think that Byrd could use his statements against him because Byrd had not advised him of his Miranda rights. This statement indicates that Lewis knew what his rights under the Fifth Amendment and Miranda were and the consequences of waiving those rights. The fact that Lewis formed an incorrect legal conclusion regarding the effectiveness of the Miranda warning given to him by Officer Burgess and his waiver of those rights immediately thereafter does not mean that he did not know of the nature of his privilege

against self-incrimination and the consequences of abandoning that privilege. If it did, then anyone who is ignorant of the intricacies of our Fifth Amendment jurisprudence would be unable, as a matter of law, to knowingly and intelligently waive those rights listed in Miranda. To the contrary, the fact that Lewis formed a legal conclusion at all—regardless of its accuracy—indicates that he understood his rights and knew the consequences of waiving those rights.

Moreover, Lewis' incorrect legal conclusion that he would only receive a five to ten year sentence for his crimes does not render his waiver ineffective. As the Supreme Court noted in Oregon v. Elstad, 470 U.S. 298, 317 (1985), "a full and complete appreciation of all of the consequences flowing from the nature and the quality of the evidence" is not the "*sine qua non* for a knowing and voluntary waiver of the right to remain silent." Rather, the standard requires that the defendant be "full[y] aware[] of both the nature of the right being abandoned and the consequences of the decision to abandon it." Rodriguez, 40 Va. App. at 156, 578 S.E.2d at 83. Thus, there is no requirement that Lewis know every possible consequence of his decision to waive his Fifth Amendment privilege. While Lewis may not have fully appreciated the full spectrum of consequences that might flow from his waiver, his belief that he would get five to ten years indicates that he at least understood that he could be found guilty and sentenced to prison for a felony offense.

While we recognize that a "defendant's relatively low intelligence and defective education are factors which should be weighed, along with all surrounding circumstances, in determining whether he voluntarily and intelligently waived his constitutional rights . . . ," Simpson v. Commonwealth, 227 Va. 557, 564, 318 S.E.2d 386, 390 (1984), these factors are not dispositive. Id.; Goodwin v. Commonwealth, 3 Va. App. 249, 254-56, 349 S.E.2d 161, 164-65 (1986). Further, the only evidence Lewis presented that suggested he was of low intelligence or

defective education came from his mother. After watching her testify, the trial court obviously rejected her testimony. This was well within the trial court's discretion. Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) ("It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony.").

Based on the record before us, the trial court's finding that Lewis' waiver was knowing and intelligent is supported by the evidence and we cannot say that it was plainly wrong. Therefore, we hold that Lewis' waiver was knowing and intelligent.

### B. Free and Voluntary Confession

"Even when a suspect has waived his Miranda rights, his confession is inadmissible if it was involuntary for other reasons." Rodriguez, 40 Va. App. at 155, 578 S.E.2d at 83. Indeed, a confession is admissible only if it was made voluntarily. Miranda, 384 U.S. at 478. On appeal, the question of voluntariness is a question of law that we review *de novo*. Washington v. Commonwealth, 43 Va. App. 291, 300, 597 S.E.2d 256, 260-61 (2004); Rodriguez, 40 Va. App. at 156, 578 S.E.2d at 83. However, if "the factual findings of the trial court are supported by the record . . . , we accord them substantial weight in making our determination whether [Lewis'] statement was voluntary." Burket v. Commonwealth, 248 Va. 596, 612, 450 S.E.2d 124, 133 (1994) (citing Miller v. Fenton, 474 U.S. 104, 112 (1985), cert. denied sub nom. Miller v. Neubert, 479 U.S. 989 (1986)).

"The test to be applied in determining voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" Midkiff v. Commonwealth, 250 Va. 262, 268, 462 S.E.2d 112, 116 (1995) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)). Indeed, "evidence of coercive police activity is a

*necessary predicate* to the finding that a confession is not voluntary." Washington v.

Commonwealth, 43 Va. App. 291, 303, 597 S.E.2d 256, 262 (2004) (emphasis added).

As with our knowing and intelligent inquiry above, to determine the voluntariness of the appellant's confession the court must consider the totality of the circumstances, including appellant's "age, intelligence, mental and physical condition, background and experience with the criminal justice system, the conduct of the police, and the circumstances of the interview." Id. at 302-03, 597 S.E.2d at 262.

> [T]he admissibility of a confession turns as much on whether the techniques for extracting the statements, as applied to this suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact overborne.

Miller, 474 U.S. at 116. Coercive interrogation techniques could include trickery and deceit, psychological pressure, or threats or promises of leniency. Washington, 43 Va. App. at 303, 597 S.E.2d at 262. In short, we must consider "both the details of the interrogation and the characteristics of the accused." Rodriguez, 40 Va. App. at 157, 578 S.E.2d at 84.

Here, the trial court found that the interrogation atmosphere was not coercive and that the detectives were "not abusive in any way" and that they did not "berate him in any way." Further, contrary to Lewis' argument on appeal, the trial court found that the detectives did not use "psychological tactics that [would] overbear his free will." The record supports these factual findings, and we give them substantial weight in our determination of whether Lewis' statements were voluntary. Miller, 474 U.S. at 112.

Lewis argues that his age and his mental infirmities "made him more susceptible to coercive police tactics than most suspects." Further, Lewis argues that "the record is replete with the kind of coercive police activity outlined in Washington." However, in Washington, this Court held that the conduct of the interrogating officers was not coercive and Washington's

- 10 -

confession was voluntary.  Id. at 304, 597 S.E.2d at 262-63.  Nonetheless, according to Lewis' argument, he was coerced to confess because Detective Byrd implied that Lewis would benefit by cooperating, he implied that cooperating would help Lewis see his child, he implied that Lewis' continued cooperation could earn leniency in sentencing, and he told Lewis that a videotape showed "everything."

Detective Byrd implied on several occasions that cooperating might help him obtain some leniency in the future.  We held in Washington that the officer's implication of leniency in exchange for cooperation is not coercive.  43 Va. App. at 304, 597 S.E.2d at 262 (The officer's statement was not an actual promise of leniency, and the officer never claimed to have the power to affect the decision of the Commonwealth's Attorney's office.).  Here, Detective Byrd never guaranteed Lewis that, by cooperating, he would receive any benefit.  The detective did not make any promises to Lewis, and he never indicated that he had authority to dispense leniency in prosecution, sentencing, or visitation rights while in prison.  Therefore, according to Washington, Detective Byrd's implication that cooperation might help Lewis in the future is not coercive.  Moreover, Detective Byrd's implications that cooperating would help Lewis see his child and gain leniency in sentencing is similarly not coercive.

Furthermore, Lewis argues that Detective Byrd deceived Lewis with his comments regarding the videotape.  Detective Byrd told Lewis that he had a videotape that showed everything but he refused to tell Lewis specifically what the videotape showed.  Lewis reasons that because the videotape was low resolution and the assailants were unidentifiable, the detective lied to Lewis.  However, Detective Byrd never told Lewis that the videotape showed him shooting Danny Teodorescu.  In fact, Detective Byrd never told Lewis that the videotape showed him do anything illegal.  He simply stated that the videotape showed "everything."

Therefore, contrary to Lewis' argument, Detective Byrd never deceived Lewis. Because his statement regarding the videotape was not deceptive, it cannot be considered coercive.

It is clear that Lewis' interrogation spanned less than one hour and, during that time, he was not denied any physical comforts, mistreated, threatened, intimidated, tricked, or deceived by Detective Byrd or Detective Burgess before he gave his statement. The record clearly establishes that Lewis was nineteen years old at the time of the interrogation, that he had completed ten grade levels and pursued his GED, that he was not intoxicated by alcohol or any drugs, and that he had prior experience with the criminal justice system. Further neither Detective Burgess nor Detective Byrd engaged in coercive activity. The trial court characterized Lewis' demeanor throughout the interrogation as "engaged." Simply put, his confession was not a product of coercive police interrogation, but rather, it was a product of his free and unconstrained choice. Therefore, in light of the totality of the circumstances, we hold that the detective's conduct did not overbear Lewis' free will and his confession was freely and voluntarily given.

### III. CONCLUSION

Thus, we conclude that the trial court did not err by denying Lewis' motion to suppress his confession. Therefore, we affirm.

<u>Affirmed.</u>