COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and Fulton
Argued at Norfolk, Virginia

UNPUBLISHED

RICHARD EUGENE STONER

                                                              MEMORANDUM OPINION[*] BY
v.          Record No. 0762-23-1                              JUDGE MARY GRACE O'BRIEN
                                                                      JUNE 18, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Steven C. Frucci, Judge[1]

Kristin Paulding (7 Cities Law, on brief), for appellant.

David A. Stock, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Richard Eugene Stoner entered a conditional guilty plea to aggravated murder, murder,

malicious wounding, statutory burglary, conspiracy, arson, four counts of using a firearm in the

commission of a felony, and torturing or mutilating a dog to death.  On appeal, Stoner contends the

court erred by denying his motions to recuse the prosecutors from the case and to suppress his

confession.  Finding no error, we affirm Stoner's convictions.

BACKGROUND

On appeal, we state the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  In doing so, we discard any of

Stoner's conflicting evidence, and regard as true all credible evidence favorable to the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The Honorable Steven C. Frucci presided over the proceedings below.  Now a member
of this Court, Judge Frucci took no part in this decision.

Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

In 2004, Lois Schmidt (Lois) and her estranged husband, Christopher Schmidt (Christopher) were involved in fiercely contested divorce and child custody proceedings. Christopher recruited Stoner to kill Lois during a series of visits involving target shooting at Stoner's home in Florida, and paid Stoner to commit the murder.

On June 27, 2004, while Christopher was in Florida, Stoner drove to Virginia Beach to kill Lois. When Stoner arrived at Lois's house on the morning of June 28, he knocked on the door and claimed to be Lois's friend from high school, but she would not let him inside. Stoner cut the phone line and tripped the electrical circuit breakers to lure Lois outside to investigate. When she and her dog exited the garage door, Stoner shot the dog. Lois screamed, and Stoner shot her in the chest. While Stoner changed the magazine in his gun, Lois's brother appeared from a back bedroom. Stoner shot Lois's brother in the chest, cheek, and shoulder. He then shot Lois in the head to ensure she was dead and ordered Lois's seven-year-old son to leave the house. When the child did not comply, Stoner shot him in the head, killing him.

Stoner set the house on fire to hide the evidence and returned to Florida. Despite his gunshot wounds, Lois's brother crawled from the burning house to a neighbor's home, who called 911. Both Christopher and Stoner were developed as suspects, but despite ongoing investigation, the crimes went unsolved until 2018.

In June 2018, Virginia Beach Police Detective Angela Murphy and other officers went to Logansport, Indiana, where Stoner lived, to interview him. The officers arranged to meet with Stoner at the Logansport Police Department and brought him a signed proffer letter from Virginia Beach Commonwealth's Attorney Colin Stolle. In the letter, Stolle agreed not to seek the death penalty for Stoner if he cooperated in the investigation and prosecution for the crimes.

Before the officers could give him the letter, however, Stoner ended the interview and left the meeting.

Detective Murphy followed Stoner outside to his vehicle and showed Stoner the letter. Stoner looked at the letter, then drove away. Afterward, the Logansport police executed a search warrant at Stoner's Indiana home and arrested him on unrelated charges.

On June 23, while Detective Murphy was at the airport to return to Virginia, an officer with the Logansport police contacted her and advised that Stoner, who was at liberty, wanted to speak with her. Detective Murphy called Stoner and agreed to return to Logansport and meet him at the police station to talk. Stoner asked if the proffer letter was "still good," and the detective advised him that she would find out.

When the Virginia Beach detectives reached the Logansport Police Department, Stoner was in an interview room talking casually with one or two police officers. The door was open, and he was not handcuffed. The detectives confirmed with Stoner that he understood that he was not under arrest and was speaking to them voluntarily. Stoner replied, "correct." Stoner had a list of demands before he would agree to give a statement. At the top of Stoner's list was "[proffer] letter confirmation." Stoner stated he had contacted a family attorney, Adam Luckenbill, to look at the proffer letter and confirm its authenticity. Nonetheless, Stoner told the detectives, "I wanna discuss some things with you." He also told the detectives that he could give them "everything [they] want." Stoner acknowledged several times that he came to the police department on his own volition and made no statements indicating that he thought he was not free to leave.

At one point, Stoner said, "I don't really don't wanna talk about it without an attorney . . . until this is confirmed and that's confirmed and we have accord." As a result, Detective Murphy called Paul Powers, one of the Virginia Beach prosecutors in the case, on

speakerphone.  Powers asked Stoner if he had any questions, and Stoner questioned whether the proffer letter was "real."  Powers confirmed that the letter was authentic and he had written it for Stolle's signature.  In subsequent phone calls, Stoner negotiated his list of demands with Powers.  After Powers told Stoner what he could authorize, Stoner said, "Okay . . . I think I'm down."

Powers also told Stoner that he had spoken to Luckenbill and that Luckenbill said he was an "estates" attorney and did not represent Stoner.  Stoner responded that he understood that Luckenbill did not represent him but that he merely wanted Lukenbill to "confirm the letter was legit" and that Powers was who he claimed to be.  Although Stoner asked the detective to call his wife and confirm that Luckenbill received the letter, he then asked the detectives if they were ready and said, "I'll tell you whatever you want to know."

At that point, the police advised Stoner of his *Miranda*[2] rights, and he executed a written waiver of his rights.  Shortly after he signed the waiver, Stoner told the detectives, "You know, in all honesty, I have wanted to do this for a long fuckin' time."  Stoner confessed to the crimes.

In denying Stoner's motion to suppress his confession, the court found that he was not in custody during the pre-*Miranda* phase of the interview, nor did he invoke his right to counsel during that period of time.  The court further concluded that Stoner's statement was voluntary and the police did not coerce him to confess.  The court rejected Stoner's claim that Powers and Stolle were necessary witnesses to issues raised in his suppression motion and denied Stoner's motion to recuse them from prosecuting the case.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

ANALYSIS

I. Custodial Police Interrogation

Stoner contends that the court erred in denying his motion to suppress his confession because police subjected him to custodial interrogation after he invoked his right to an attorney. We first consider whether Stoner was subject to a custodial interrogation.

Under *Edwards v. Arizona*, 451 U.S. 477 (1981), "when an accused, during a *custodial interrogation*, invokes the right to have counsel present, the police may not resume the interrogation until the individual re-initiates communications and waives his right to counsel." *Tipton v. Commonwealth*, 18 Va. App. 832, 834 (1994). The *Edwards* rule, however, "has not been expanded to include non-custodial demands for an attorney." *Id.*

Whether a suspect is subject to a custodial interrogation "is determined by the circumstances of each case, and 'the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with formal arrest.'" *Ford v. Commonwealth*, 28 Va. App. 249, 256 (1998) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). To evaluate a suspect's custodial status, we consider "how a reasonable person in the suspect's situation would have understood his circumstances." *Keepers v. Commonwealth*, 72 Va. App. 17, 34 (2020) (quoting *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 41 (2019)). Evaluating whether a detention is "custodial" requires consideration of many factors, including "whether a suspect is questioned in familiar or neutral surroundings, the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation." *Wass v. Commonwealth*, 5 Va. App. 27, 32-33 (1987). "[N]o single factor alone may necessarily establish custody for *Miranda* purposes, and not all factors may be relevant in a given case." *Id.* at 33.

It is undisputed that Stoner himself initiated contact with Detective Murphy, asked to speak with the Virginia Beach detectives, and agreed to meet them at the Logansport Police Department. When the detectives arrived, Stoner was in an interview room with the door open, speaking casually to police officers there. A detective explicitly told Stoner that he was not under arrest. He was unrestrained, and there was nothing to prevent him from leaving and ending the contact with the police. Indeed, Stoner had left a police interview a few days prior without being stopped. During his conversation with the Virginia Beach detectives, Stoner repeatedly acknowledged that he was at the police department willingly and was there to make a deal. Accordingly, a reasonable person in Stoner's circumstances would have felt free to leave, and these facts amply support the court's ruling that Stoner was not subject to a custodial interrogation before he was advised of his *Miranda* rights.[3] *See Keepers*, 72 Va. App. at 35-36.

## II. Voluntariness of Confession

Stoner argues that the court erred by denying his motion to suppress his confession because it resulted from police coercion. He maintains that the "pressure applied on him" because of the search of his home and "the threat of the death penalty" in the proffer letter "are the only reasons [he] reached out to the detectives and confessed."

Statements are made "voluntarily" when they are "the product of a free and deliberate choice rather than intimidation, coercion or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "Although we defer to the court's findings of historical fact unless plainly wrong or without evidentiary support, we review the legal question of voluntariness de novo." *Keepers*,

---

[3] Having reached this conclusion, we need not examine whether Stoner unequivocally invoked his right to counsel before he received his *Miranda* warnings by requesting that Luckenbill assess the proffer letter. *See Commonwealth v. White,* 293 Va. 411, 419 (2017) (recognizing that "judicial restraint dictates that we decide cases on the best and narrowest grounds available" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))). For the same reason, we need not consider whether receiving *Miranda* warnings precluded examination of the pre-warning circumstances. *See Missouri v. Seibert*, 542 U.S. 600 (2004).

72 Va. App. at 40. To determine whether "the statement was the product of an essentially free and unconstrained choice by its maker," we consider the totality of the circumstances, "including not only the details of the interrogation, but also the characteristics of the accused." *Id.* (quoting *Novak v. Commonwealth*, 20 Va. App. 373, 386 (1995)). Such characteristics include his "age, intelligence, mental and physical condition, background and experience with the criminal justice system." *Id.* at 41 (quoting *Washington v. Commonwealth*, 43 Va. App. 291, 302 (2004)). Police conduct is also relevant, such as "interrogation techniques employed, including evidence of trickery and deceit, psychological pressure, threats or promises of leniency, and duration and circumstances of the interrogation." *Id.* (quoting *Terrell v. Commonwealth*, 12 Va. App. 285, 291 (1991)). In any event, however, "[c]oercive police activity is a 'necessary predicate' to finding that a confession was involuntary." *Thomas v. Commonwealth*, 72 Va. App. 560, 580 (2020) (quoting *Colorado v. Connelly,* 479 U.S. 157, 167 (1986)).

The circumstances surrounding Stoner's confession show that it was not the product of "intimidation, coercion or deception." *Moran*, 475 U.S. at 421. As discussed previously, Stoner initiated contact with the detectives and requested a meeting with them. These actions belie Stoner's claim that he was somehow coerced because the police had searched his home pursuant to a warrant. Furthermore, during his exchange with the detectives and phone calls with Powers, Stoner sought to confirm the validity of the Commonwealth's assertion that it would not seek the death penalty, but the Commonwealth made no other promises of leniency concerning what charges Stoner might face or how he could be punished. Indeed, Stoner presented the detectives with a list of demands and negotiated them with Powers, evincing his knowledge of the criminal justice system. As the Commonwealth argues on brief, "Stoner engaged in a cautious give-and-take discussion with detectives in deciding whether to agree to cooperate with them."

Because the record contains no evidence of coercive conduct by the police, we will not disturb the court's finding that Stoner's confession was freely and voluntarily given.

### III. Recusal of Prosecutors

Stoner argues that the court erred by refusing to recuse Powers and Stolle from the case because they were necessary witnesses to his motion to suppress. He maintains that he needed to challenge the meaning of the terms in the proffer letter to establish that his confession was coerced and that to do so, he needed to question "the two men who prepared the letter."

Under Rule 3.7(a) of the Rules of Professional Conduct, "[a] lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness," with some exceptions. "Critical to the application of this principle is the requirement that the lawyer be a *necessary* witness." *Teleguz v. Commonwealth*, 273 Va. 458, 490-91 (2007). This Court reviews a trial court's refusal to recuse the Office of the Commonwealth's Attorney for an abuse of discretion. *Fisher v. Commonwealth*, 16 Va. App. 447, 456 (1993).

The court did not abuse its discretion by finding that Stoner failed to establish that Powers and Stolle were necessary witnesses. Stoner makes no arguments as to how questioning Powers and Stolle about the contents, details, and meaning of terms in the letter would further his arguments about coercive police conduct; indeed, Stoner's argument is that the letter was coercive by plainly mentioning the death penalty, which intimidated him into confessing. As noted above, the record contains no indication that Stoner's confession was coerced. Stoner consistently indicated that he wanted to talk to the police and desired only confirmation of the authenticity of the proffer letter, not clarification on its contents. Under these facts, the court did not abuse its discretion by refusing to recuse Powers and Stolle from prosecuting Stoner's case.

CONCLUSION

For these reasons, we affirm the court's judgment.

*Affirmed.*