COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Petty and Alston
Argued at Chesapeake, Virginia


SHAVIS SHUNDALE CLARK

                                              MEMORANDUM OPINION[*] BY
v.         Record No. 1398-10-1               JUDGE WILLIAM G. PETTY
                                                    JULY 5, 2011
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                            John R. Doyle, III, Judge[1]

           J. Barry McCracken, Assistant Public Defender, for appellant.

           Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
           Cuccinelli, II, Attorney General, on brief), for appellee.


       Appellant, Shavis Shundale Clark, was convicted in a bench trial of possession of cocaine

with intent to distribute in violation of Code § 18.2-248, transporting one or more ounces of

cocaine into the Commonwealth in violation of Code § 18.2-248.01, and conspiracy to distribute

cocaine in violation of Code § 18.2-256.  On appeal, Clark argues that the trial court abused its

discretion when it (1) ruled that Clark could not argue that the police exceeded the scope of the

search warrant because he had not included that challenge in his written motions and (2) ruled

that it would not grant Clark another hearing if he filed another motion to suppress raising that

issue.  Clark also argues that the evidence was insufficient as a matter of law to support his

convictions.

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] Judge Doyle presided over Clark's trial.  Judge Everett A. Martin, Jr., presided over the
suppression hearing that is also the subject of this appeal.

For the following reasons, we conclude that the trial court did not abuse its discretion by refusing to consider the new argument that was not included in Clark's written motion to suppress, and further, that Clark failed to preserve his objection to the scope of the search. We also disagree that the evidence was insufficient to support the convictions for possession of cocaine with intent to distribute and for transporting an ounce or more of cocaine into Virginia. However, we agree that the evidence was insufficient to support the conspiracy charge. Thus, we reverse and dismiss the conspiracy conviction and affirm the remaining convictions.

I.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite below only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. We view the evidence in the light most favorable to the Commonwealth, and grant to it all reasonable inferences fairly deducible from that evidence. Brown v. Commonwealth, 56 Va. App. 178, 180, 692 S.E.2d 271, 272 (2010).

II.

A. Suppression

Clark first assigns error to two trial court actions relating to his objection to the seizure of certain evidence during a search pursuant to a warrant. Clark filed two motions to suppress prior to trial. The first motion asked the trial court to suppress the evidence seized by police during the search of Clark's apartment due to an alleged lack of probable cause to issue the warrant. The second motion asked the trial court to suppress statements Clark made to police. At the hearing, Clark's trial counsel attempted to expand his argument challenging the search by alleging that the police exceeded the scope of the search warrant by seizing items that were not included in the warrant. In response to the Commonwealth's objection to the new argument,

- 2 -

Clark stated, "I can file another motion." The trial court sustained the Commonwealth's objection, concluding that Clark had failed to give written notice that he would present the new argument. The trial court also said, "Well, we're not going to have two suppression hearings. I'll make that ruling now. You've had plenty of time to file suppression motions in this case. This case has been pending for an inordinate length of time. We're not going to have another suppression hearing." Thereafter, Clark asked the court to allow him to argue the issue at the current hearing, explaining that there was no need for an additional hearing. The trial court denied the request, reiterating that the Commonwealth had not received proper notice. Clark later filed a written motion to suppress that embodied the argument he wished to make at the previous hearing. He never requested either a hearing or a ruling on the written motion.

Clark now appeals the trial court's refusal to consider his challenge to the scope of the search. We conclude that the trial court did not abuse its discretion by refusing to consider the new argument at the hearing because it was not included in the pending written motion to suppress. We further conclude that Clark waived his subsequent written motion to suppress because he failed to ask the trial court to rule on that written motion.

"In Virginia, the conduct of a trial is committed to the discretion of the trial court." Frye v. Commonwealth, 231 Va. 370, 381, 345 S.E.2d 267, 276 (1986) (citing Watkins v. Commonwealth, 229 Va. 469, 484, 331 S.E.2d 422, 433 (1985)). Part of the conduct of a trial includes pre-trial matters before the court, including motions to suppress. See Code § 19.2-60 (stating that a criminal defendant may move to suppress evidence obtained by an allegedly unlawful search or seizure); Code § 19.2-266.2 (setting forth when a defendant must file a suppression motion and when a hearing should be held); Rule 3A:9 (allowing the parties to raise certain matters before trial). Under Code § 19.2-266.2, a defendant that wishes to move the court

- 3 -

to suppress evidence must do so in writing.  Further, under Rule 3A:9(b)(3), the written motion must "state with particularity the ground or grounds on which it is based."

Here, the trial court did not abuse its discretion by refusing to allow Clark to interject additional objections to the lawfulness of the seizure of evidence.  At the time of the hearing, his written motion to suppress pertaining to the search alleged only that there was no probable cause to justify the issuance of the search warrant.  He did not allege that the police exceeded the scope of the search warrant by seizing items not listed in the warrant.  Accordingly, Clark's written motion failed to state the issue he wished to argue with the particularity required by Rule 3A:9. Therefore, the trial court was within its discretion to limit the scope of the suppression hearing to only those issues raised by Clark in his written motions.

Regarding Clark's assignment of error related to his subsequent motion to suppress, we conclude that Clark's actions below failed to adequately preserve this issue for appeal.  Under Rule 5A:18,[2] "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."  The purpose of this Rule "is to afford the trial court an opportunity to rule" on the motion.  Williams v. Commonwealth, 57 Va. App. 341, 347, 702 S.E.2d 260, 263 (2010).  A party that brings a motion to the attention of the trial court, but then disclaims any desire to receive a ruling from the court, has failed to afford the trial court the opportunity to rule on the motion and has thereby failed to preserve any issues raised in the motion for appeal.  See Nusbaum v. Berlin, 273 Va. 385, 396-97, 405-06, 641 S.E.2d 494, 499-500, 505-06 (2007) (holding that when a party makes

---

[2] Effective July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."  Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

an objection but tells the trial court he is merely seeking to preserve the record and nothing more, the party has not actually sought a ruling on the objection).[3]

Here, Clark never asked the trial court for a ruling on his motion once he had filed it.[4] The only time Clark's trial counsel ever brought the filed motion to the attention of the trial court was just before the trial began. At that time, counsel disclaimed his desire for a ruling, stating that he filed the motion not to contravene the previous ruling of the court, "but rather to make the record for [his] client." Accordingly, he did not ask for an actual ruling on the motion at that time. Thus, whether the police exceeded the scope of the search warrant is an issue he failed to preserve for appeal.

## B. Sufficiency of the Evidence

Clark also assigns error to the trial court's ruling that the evidence was sufficient to support all of the charges against him. We disagree with respect to the charges of possession of cocaine with intent to distribute and transporting one ounce or more of cocaine into the Commonwealth. We conclude that the evidence, taken with reasonable inferences, was sufficient to prove that Clark had arranged for a second person to sell him cocaine. Thus, the evidence was sufficient to prove that he knew the unopened FedEx box he received contained cocaine and that he was a principal in the second degree to the transportation of cocaine into the

---

[3] "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, appellant does not argue these exceptions and we will not invoke them *sua sponte*." Williams, 57 Va. App. at 347, 702 S.E.2d at 263 (citing Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc)).

[4] The trial court was incapable of rendering a decision on the motion before it was filed. Although Clark alleges that the trial court effectively ruled that it would not consider the motion once he filed it, the court did not actually make such a ruling. Instead, it ruled that it would have no further suppression *hearings*. In response, Clark told the court that *he did not want a hearing* because in his view it was unnecessary. So, by his own admission, he only required a ruling from the trial court on a motion he had not yet filed. Thus, he was required to ask for a ruling on the motion once he had filed it in order to seek a remedy from this Court. See Rule 5A:18. As we explain further, he never asked for such a ruling after he filed his motion.

Commonwealth. However, we agree with Clark that the evidence was insufficient to prove that Clark conspired with the second person to distribute cocaine because the evidence failed to demonstrate anything beyond a mere sale of drugs, which is legally insufficient to support the charge.

The relevant evidence shows that the police intercepted a package at a FedEx distribution facility in Norfolk that they suspected of containing contraband. The package was addressed to Jason Thomas, 1626 Lovitt Avenue, Apt. 4, Norfolk, Virginia. The package had a return address of Marie Thomas, 470 Northeast 123 Street, Miami, Florida. It was marked for overnight delivery. After a drug dog indicated the presence of illegal drugs in the package, the police obtained a search warrant for the package, opened it, and discovered about 124 grams of cocaine inside, along with other items, including dryer sheets. Because the dog had damaged the package, the police placed the contents of the package inside a new, identical FedEx package, with the exception that they only put about 1.5 grams of the cocaine inside the new package. They also transferred the "air bill" that indicated the recipient and return addresses onto the new package.

The police then obtained an "anticipatory" search warrant predicated on the successful delivery of the package to 1626 Lovitt Avenue, Apt. 4, in Norfolk. A police officer disguised as a FedEx employee delivered the package to the address and was greeted at the door by Clark. When the officer asked Clark whether he was Jason Thomas, Clark said Thomas was his cousin. When asked whether he would accept the package on Thomas' behalf, Clark agreed and accepted the package. Not long after, the police executed the anticipatory search warrant on the apartment. They found Clark sitting on a couch in the living room of the apartment with the unopened package resting on a nearby coffee table. They also found a digital scale, a smaller

manual scale, and several plastic baggies in his bedroom. Some of the baggies were the kind one would use to package cocaine for individual sale.

When the police asked Clark who Jason Thomas was, Clark said he did not know. When asked why he said the package was for his cousin, Clark claimed that he had just awakened when he came to the door and that he did not completely understand what was going on. Clark also tried to convince the police that he possessed the scales and baggies because he distributed marijuana "back in the day." Finally, when confronted with evidence that he had recently sent money orders to Florida, Clark told the police that a person he did not know had given him money to send to Clark's roommate in Florida and that Clark did so. The trial court, sitting without a jury, found that these were "not rational" explanations and convicted Clark on all charges.

When reviewing the sufficiency of the evidence to support the verdict in a bench trial, "the trial court's judgment is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless it is 'plainly wrong or without evidence to support it.'" Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999) (quoting Code § 8.01-680; King v. Commonwealth, 217 Va. 601, 604, 231 S.E.2d 312, 315 (1977)). Hence, an "appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Britt v. Commonwealth, 276 Va. 569, 573-74, 667 S.E.2d 763, 765 (2008) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (emphasis in original) (quoting Jackson, 443 U.S. at 319). "'This familiar standard gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts.'" Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010) (quoting Jackson, 443 U.S. at 319).

### 1. Possession of Cocaine with Intent To Distribute

Clark first argues that the evidence was insufficient to prove possession of cocaine with intent to distribute. He asserts that no rational trier of fact could infer from the evidence that Clark knew that the unopened package contained cocaine. We disagree.

In order to convict a defendant of possession of an illegal drug with intent to distribute, the Commonwealth must prove that the defendant was aware of the presence and character of the drug and that he intentionally and consciously possessed it. Ward v. Commonwealth, 47 Va. App. 733, 751, 627 S.E.2d 520, 529 (2006), aff'd on other grounds, 273 Va. 211, 639 S.E.2d 269 (2007). To determine these elements, we may, and often must, look to circumstantial evidence. Id. Thus, the defendant's conduct and statements, taken together with the surrounding circumstances, may be sufficient to prove that the defendant was aware of the presence and character of an illegal drug and that he intentionally and consciously possessed it. Id. We have previously held that the evidence was sufficient to convict a defendant of possession of cocaine with intent to distribute and possession of marijuana with intent to distribute when he received a package containing cocaine and marijuana, even though he never opened the package. Id. at 751-53, 627 S.E.2d at 529-30. In Ward, the defendant received a package containing marijuana and cocaine addressed to a female. Id. at 738-39, 627 S.E.2d at 523. The marijuana and cocaine were heat sealed and wrapped in carbon paper in an attempt to throw off drug-sniffing dogs. Id. at 739, 627 S.E.2d at 523. Upon delivery, the defendant confirmed that the package was for him, even though it was addressed to a female. Id. Thereafter, police executed an anticipatory search warrant on the address. Id. In addition to the unopened package, the police found several small plastic baggies suitable for packaging marijuana for individual

sale. Id. When asked about the package, the defendant said he thought the package was his because he was expecting to receive some tapes in the mail. Id. According to this Court:

> [The defendant's] admissions, which permitted the inference he was using a fictitious name—coupled with the manner of the packaging of the drugs to prevent detection by drug sniffing dogs, [the defendant's] prior receipt of two almost identical packages, and the inference that drugs are a thing of value people are unlikely to abandon or ship to another without warning—were sufficient to support a finding that [the defendant] was expecting to receive the drugs through the mail . . . and that he intentionally and consciously possessed them even before he opened the package.

Id.

Ward is instructive on several points relevant to this case. First, as in Ward, the fact-finder could reasonably infer that Clark was using an alias. Clark initially told the officer disguised as a FedEx deliveryman that the intended recipient of the package, Jason Thomas, was his cousin. Not long after, he told police that he had no idea who Jason Thomas was. From this apparent lie, along with the fact that the sender was a "Marie Thomas," the fact-finder could reasonably infer that "Jason Thomas" was really Clark. Second, like the package in Ward that contained material intended to throw off the scent of drug-sniffing dogs, the package in this case contained dryer sheets, which the fact-finder could reasonably infer had the same purpose. Third, like the defendant in Ward, Clark possessed several plastic baggies that one would use to distribute the illegal drug contained within the package he received. Fourth, as Ward notes, drugs are valuable; a person is unlikely to ship drugs to another person without warning. Finally, Clark's admission to sending money to someone in Florida could reasonably be construed as payment for the drugs.

Thus, the circumstances in this case provide compelling evidence that Clark knew that cocaine was inside the package delivered to his apartment. His apparent attempts to conceal that guilt are particularly probative. Clark tried to deny that he knew who Jason Thomas was, even

- 9 -

though minutes before Clark claimed that Thomas was his cousin. He also unconvincingly claimed that he had used the scales and baggies to distribute drugs long ago, but that he was not currently dealing drugs. The fact-finder was free to disbelieve these self-serving statements, and further, to infer that Clark was actually concealing his knowledge of what was inside the package. See Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982) (holding that the fact-finder "'need not believe the accused's explanation and may infer that he is trying to conceal his guilt'" (quoting Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981))).[5] Although any one of the foregoing circumstances, standing alone, may have given rise only to a general suspicion insufficient to support an inference that Clark knew the contents of the package, taken in their totality these circumstances provided sufficient evidence that Clark knew the contents of the package. Accordingly, the evidence was sufficient to prove that Clark intentionally and consciously possessed the cocaine inside the package with an awareness of its nature and character.

### 2. Transporting Cocaine into the Commonwealth

Clark also argues that the evidence was insufficient to prove that he transported an ounce or more of cocaine into the Commonwealth in violation of Code § 18.2-248.01. He suggests that the trial court improperly convicted him as a principal in the second degree. We disagree.

Code § 18.2-248.01 makes it "unlawful for any person to transport into the Commonwealth by any means with intent to sell or distribute one ounce or more of cocaine," among other illicit substances. As with any felony, a person is guilty of the crime set forth in Code § 18.2-248.01 not only if he is a principal in the first degree, but also if he is a principal in

---

[5] Clark argues that the fact that only 1.5 grams of cocaine were actually delivered to him undercuts the case against him. This argument is unpersuasive. The important fact here is that a large amount of cocaine was shipped to Clark, and the fact-finder could reasonably infer that it was shipped to him so he could sell it—regardless of the ultimate quantity that ended up in his possession.

- 10 -

the second degree.  Washington v. Commonwealth, 43 Va. App. 291, 306, 597 S.E.2d 256, 263 (2004).  To be a principal in the second degree, the person must be "'present, aiding and abetting, by helping some way in the commission of the crime.'"  Id. (quoting Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986)).  The person must "share[] the criminal intent of the principal [in the first degree] or 'commit[] some overt act in furtherance of the offense.'"  Id. (quoting Sutton v. Commonwealth, 228 Va. 654, 666, 324 S.E.2d 665, 671 (1985)).  In the case of transportation of an illegal drug into the Commonwealth, a person is present during the commission of the crime when he receives the drug in the Commonwealth, since "unloading" the package is a necessary part of "transportation."  Id. at 306, 597 S.E.2d at 264.  Further, a person performs an overt act in such circumstances when he creates the conditions necessary for the receipt of a package containing an illicit drug within the Commonwealth, with knowledge of the illegal drug therein.  Id. at 297, 308, 597 S.E.2d at 259, 264.  In Washington, for instance, a person committed overt acts necessary to become a principal in the second degree when he rented a mailbox for the purpose of receiving a package containing marijuana and he actually received the package.  Id.

Here, the evidence was sufficient to prove that Clark committed an overt act in furtherance of the crime and that he was present during the commission of the crime.  As we have already explained, the evidence was sufficient to prove that Clark knew that the package contained cocaine and that he had purchased it from an unknown supplier in Florida.[6]  Given this, the fact-finder could also reasonably infer that Clark had told his supplier to send the

--------------------------------------

[6] Clark argues that the Commonwealth failed to exclude the reasonable hypothesis that Clark sent the package to himself.  We disagree.  Given that the shipment originated in Florida and the "overnight" indication on the package, the fact-finder could reasonably believe that the package was, in fact, sent overnight from Miami, Florida to Norfolk, Virginia.  Because these locations are so far apart, the fact-finder could therefore reasonably believe that Clark did not send the package to himself.

cocaine to his apartment. By doing so, Clark committed an overt act by designating his apartment as the destination for the cocaine, just as the appellant in Washington had rented a mailbox for the same purpose. Further, Clark committed another overt act by receiving the cocaine, just as the appellant did in Washington. Finally, by receiving the cocaine and completing the act of transportation, Clark was also present during the crime. Therefore, the evidence was sufficient to prove that Clark was a principal in the second degree to the crime of transporting an ounce or more of cocaine into the Commonwealth in violation of Code § 18.2-248.01.

3. Conspiracy To Distribute Cocaine

Clark finally argues that the evidence was insufficient to prove that he conspired to distribute cocaine in violation of Code § 18.2-256. Clark asserts that even if a reasonable trier of fact could infer the existence of an agreement between him and a supplier in Florida, there is no evidence that the agreement went beyond anything more than a mere sale of cocaine, which is insufficient to prove the crime. We agree with Clark that, at best, the evidence established a single sale between Clark and a supplier that failed to establish the facts necessary to push the sale into the realm of conspiracy. Thus, we conclude that the evidence was insufficient as a matter of law to support Clark's conviction for conspiracy to distribute cocaine.

To establish a conspiracy to distribute an illegal drug, the evidence must demonstrate "(1) 'that the seller knows the buyer's intended illegal use,' and (2) 'that by the sale [the seller] intends to further, promote and cooperate in [the venture].'" Zuniga v. Commonwealth, 7 Va. App. 523, 529, 375 S.E.2d 381, 385 (1988) (alterations in original) (quoting Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943)). The first element of the test is satisfied when the seller sells an illegal drug to a buyer in a significant quantity, since the seller "should have known that the [illegal drug] would be used and further distributed illegally." Id. "Proof of such knowledge

- 12 -

alone, however, is insufficient to convict" a person of conspiracy to distribute an illegal drug. Id. Accordingly, "[a]s a general rule, a single buyer-seller relationship, *standing alone*, does not constitute a conspiracy." Id. (emphasis added). Rather, additional evidence must exist "which establishes the necessary preconcert and connivance" to elevate the relationship beyond that of mere aiding and abetting. Id.

As in Zuniga, the issue we must determine in this case is whether the evidence demonstrated that the person who sold Clark the cocaine intended "'by the sale . . . to further, promote and cooperate in' [Clark's] venture." Id. (quoting Direct Sales, 319 U.S. at 713.) In Zuniga, this Court held that evidence of a credit relationship between a buyer and a seller of cocaine was sufficient to prove a conspiracy to distribute because it demonstrated that the seller intended to further, promote and cooperate in the buyer's enterprise. Id. at 530-32, 375 S.E.2d at 386-87. Similarly, in Edwards v.Commonwealth, 18 Va. App. 45, 48-49, 441 S.E.2d 351, 353-54 (1994), this Court held that a conspiracy existed between two buyers when the evidence suggested that one of the buyers expected to share in the profits made by the other buyer through the sale of the marijuana that they jointly purchased.

Here, however, there was no evidence of the nature of the relationship between Clark and his supplier. Without some evidence of the nature of this relationship, the trial court could not determine whether Clark merely made a single purchase from the supplier or whether the supplier had entered into an agreement to cooperate in the further distribution of the cocaine. Thus, the Commonwealth failed to demonstrate that the supplier had an intention to further, promote and cooperate in Clark's distribution of the cocaine. The evidence failed to establish the second element of a conspiracy to distribute cocaine, and so we must conclude that the evidence was insufficient to support Clark's conviction for the crime. Therefore, we reverse and dismiss the conviction for conspiracy to distribute cocaine under Code § 18.2-256.

- 13 -

III.

For the foregoing reasons, we conclude that the trial court did not err regarding the motion to suppress. We also conclude that the evidence was sufficient to support Clark's convictions for possession of cocaine with intent to distribute in violation of Code § 18.2-248 and for transporting one or more ounces of cocaine into the Commonwealth in violation of Code § 18.2-248.01. However, we conclude that the evidence was insufficient to support Clark's conviction for conspiracy to distribute cocaine in violation of Code § 18.2-256. Therefore, we affirm his convictions for possession of cocaine with intent to distribute and for transporting cocaine into the Commonwealth, and we reverse and dismiss his conviction for conspiracy to distribute cocaine.

Affirmed in part,
reversed and
dismissed in part.

Alston, J., concurring.

I agree with the majority that the trial court did not abuse its discretion in refusing to consider Clark's challenge to the scope of the search of his apartment during the hearing on the motions to suppress. However, I would hold that the trial court erred in failing to consider Clark's subsequent motion to suppress challenging the scope of the search of his apartment and that Clark properly preserved this issue for appeal. Nevertheless, because I would also hold that the trial court's error was harmless, I concur in the result reached by the majority.

I. Preservation of the Issue under Rule 5A:18

Prior to trial, Clark filed two written motions to suppress. The first moved to suppress any statements he made to law enforcement officers on the grounds that they were obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).[7] The second moved to suppress the evidence seized by police during the search of Clark's apartment due to an alleged lack of probable cause to issue the warrant.

During the initial hearing on the motions to suppress, held on January 5, 2010, Clark attempted to raise an additional argument regarding his motion to suppress the evidence seized by the police from his apartment, contending that the search of his apartment exceeded the scope of the warrant. Clark argued that the warrant authorized only the seizure of controlled substances and that, according to Clark, the seizure of papers, plastic baggies, and two scales exceeded the scope of the warrant. After the Commonwealth objected on the ground that this new argument was not included in Clark's written motion regarding the issuance of the warrant, Clark responded by stating to the trial court that he could file another motion challenging the scope of the search of his apartment. In reaction to Clark's response, the trial court said, "Well, we're not going to have two suppression hearings. *I'll make that ruling now. . . .* We're not

---

[7] This motion is not at issue on appeal.

- 15 -

going to have another suppression hearing." (Emphasis added). Clark responded that the trial court could "handle [his motion on the scope of the search] at this juncture" by simply looking at the warrant, and he "would ask the Court to do that." However, the trial court refused to hear argument on Clark's challenge to the scope of the search of his apartment and sustained the Commonwealth's objection. At the end of the hearing, Clark reiterated to the trial court that he should be allowed to "perfect a motion" because "a motion filed prior to the trial date should be heard." The trial court responded that the court should not "encourage *seriatim* filing of motions to suppress."

Thereafter, on February 26, 2011, Clark filed a third motion to suppress, specifically challenging the scope of the search of his apartment. Clark noted in his written motion that it was a restatement of the argument regarding the scope of the search of his apartment previously raised orally before the trial court at the January 2010 hearing on the motions to suppress. Clark further stated that his new motion was filed not to contravene the trial court's ruling at that hearing, but rather "solely to preserve the constitutional issue for appeal." The written motion also requested that the trial court "grant his motion to suppress the fruits of the search" of the apartment. Clark's motion was timely under Code § 19.2-266.2, because it was filed more than seven days before trial.

On the day of trial, Clark brought the February 26 motion challenging the scope of the search to the attention of the trial court. Clark noted that he had raised the issue of the scope of the search of his apartment orally before Judge Martin[8] at the January 2010 hearing on the original motions to suppress and had filed a written motion relating to the scope of the search as

_____

[8] As the majority notes, Judge Martin presided over the hearing on the motions to suppress. Judge Doyle presided over Clark's trial.

- 16 -

well.  Clark stated that he "didn't push to have the date heard because Judge Martin had already ruled previously that he wouldn't authorize the filing of the motion."

I respectfully suggest that these circumstances show that Clark did not "explain[] that there was no need for an additional hearing" at the January 2010 hearing on the motions to suppress, as the majority asserts.  While Clark did ask the trial court to consider his argument regarding the scope of the search at the January 2010 hearing on the motions to suppress, he did not thereby concede that no further hearing was necessary.  Instead, at the end of the hearing on the motions to suppress, Clark reiterated his intent to raise his argument in a new motion to suppress, and the trial court *again* denied Clark's request, stating that it would not "encourage *seriatim* filing of motions to suppress."  Furthermore, Clark later filed a motion specifically focusing on his argument that the seizures exceeded the scope of the warrant and explained to the trial court on the day of trial that he had refrained from requesting a hearing after filing his motion not because he believed a hearing to be unnecessary, but because *Judge Martin had previously expressly ruled that no such hearing would be held.*  Indeed, these actions and statements, in my view, show that Clark favored and properly perfected his request for a hearing on his motion to suppress and was not formally heard only because the trial court had preemptively ruled that it would not hold such a hearing.

In reaching its decision, the majority subordinates substance to form, contrary to the longstanding policy of this Court.  See, e.g., Irvine v. Carr, 163 Va. 662, 668, 177 S.E. 208, 210 (1934) ("[I]t has been the policy of this court for many years, and is still, to subordinate form to substance, and not to allow the substantial rights of parties to be taken away for the sake of adherence to any forms of procedure not essential to the orderly conduct of judicial proceeding.")  The purpose of Rule 5A:18 "is to ensure that any perceived error by the trial court is 'promptly brought to the attention of the trial court with sufficient specificity that the alleged

error can be dealt with and timely addressed and corrected when necessary.'" Wood v. Commonwealth, 57 Va. App. 286, 303, 701 S.E.2d 810, 818 (2010) (quoting Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989)).

In the instant case, Clark made clear to the trial court both his argument regarding the scope of the search of his apartment and his desire that the trial court hold a hearing and rule on his oral motion to suppress. After the trial court expressly ruled that it would not hold another hearing on the newly-raised issue, Clark made his objection to this ruling clear by reiterating his desire to file a new motion and stating that "a motion filed prior to the trial date should be heard." Once the trial court again denied Clark's request, it was not necessary for Clark to yet again restate his objection to preserve it for appeal. The trial court had an opportunity to rule on the issue, and indeed specifically ruled that it would not hold a hearing on the newly-raised motion to suppress. Thus, in my view, Clark properly preserved the issue of the trial court's refusal to hold a hearing on his motion to suppress for appeal. See Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (holding that the plaintiffs' claims were not waived by their failure to object to the trial court's oral ruling sustaining the defendant's motion to dismiss and endorsement of the trial court's ruling merely as "seen" because the plaintiffs "repeatedly made known to the court [their] position" during a hearing on the defendant's motion to dismiss and filed a motion for rehearing within 21 days after the issuance of the trial court's final order); Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991) (holding that although the appellant failed to endorse the final decree or state any objections thereto, he had "made known to the trial court his position" through memoranda and written correspondence prior to the issuance of a final decree and the trial court had "specifically acknowledged the existence of [the appellant's] objections").

I respectfully disagree with the majority's reliance on Nusbaum v. Berlin, 273 Va. 385, 641 S.E.2d 494 (2007), because the instant case is distinguishable from Nusbaum. In Nusbaum, the trial court held an attorney in contempt for his misconduct during a jury trial, granted a mistrial, disqualified the attorney's firm from representing the plaintiffs in the original jury trial, and awarded attorneys' fees and costs to the opposing party. Id. at 390, 396, 641 S.E.2d at 496, 499. Initially, after the trial court imposed a fine on the attorney, the attorney noted only his general objection to "the determination of the [c]ourt . . . and to all of the rulings." Id. at 396, 641 S.E.2d at 499. Shortly thereafter, the attorney filed a motion asking the trial court to reconsider its decision to disqualify his law firm from any further representation of the plaintiffs and noted that he was "not asking the [trial] court to reconsider any other part of its rulings." Id. At a hearing on this motion, the attorney then stated that he wanted to "note specific objections to the contempt of court findings since he had voiced only a general objection to the court's rulings" at the contempt hearing. Id. at 397, 641 S.E.2d at 500. The attorney objected to the summary determination of contempt of court but stated that he was not "asking [the court] at this time to change [its] ruling." Id. (alterations in original). Instead, he stated that he was attempting to ensure that he "preserved any right of appeal with respect to the contempt finding." Id. At a subsequent hearing, the attorney once again stated that he was not asking the trial court to reconsider its ruling but that, instead, "he merely wanted the court's order to include the 'particulars' of his objection with respect to the contempt of court conviction." Id. On appeal, the Supreme Court of Virginia held that the attorney waived his objection to the summary conviction for criminal contempt because he never afforded the trial court the opportunity to rule on the issue. Id. at 403, 641 S.E.2d at 503.

In Nusbaum, the Court determined that the record "contain[ed] no rulings by the circuit court" on the issue raised by the defendant on appeal. Id. at 404, 641 S.E.2d at 504; see also

Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993) (holding that "because [the appellant] was denied nothing by the trial court, there is no ruling for [this Court] to review"); Hogan v. Commonwealth, 5 Va. App. 36, 45, 360 S.E.2d 371, 376 (1987) (holding that the appellant's argument was waived under Rule 5A:18 because there was "no ruling of the trial court to review"). In stark contrast, the instant case contains the express ruling of the trial court during the January 2010 hearing that it *would not* hold a second hearing on Clark's motion to suppress. As such, this ruling is one capable of review by this Court. Unlike in Nusbaum, Clark provided the trial court with ample opportunities to rule regarding his request to file, and be heard, on a new motion to suppress challenging the scope of the search of his apartment. Clark twice made a specific argument to the trial court that a timely-filed new motion should be heard. Moreover, the trial court in fact expressly ruled on this issue at the January 2010 hearing when it stated that it would not hold any further hearings on the motion to suppress. As a result, the instant case is distinguishable from Nusbaum and Clark adequately preserved his issue for appeal by making his objection known to the trial court.

Finally, in its rather fixed application of Nusbaum, the majority's decision creates a dilemma for trial counsel, who must balance the need to zealously advocate for their clients against their professional obligations to "demonstrate respect for the legal system and for those who serve it, including judges." Preamble of the Virginia Rules of Professional Conduct. Indeed, an attorney who continues to press his objection after the adverse ruling of the trial court may face contempt of court charges. See Stroupe v. Rivero, No. 1936-02-4, 2003 Va. App. LEXIS 630, at *13-14 (Dec. 9, 2003) (Benton, J., dissenting) (noting that the majority affirmed the finding of contempt against an attorney who was "assertive in seeking a ruling" as required by Virginia precedent establishing that "it is [an] attorney's responsibility to obtain a ruling from the trial judge"). Here, I believe that Clark, through counsel, was simply attempting to walk the

fine line between the need to make clear his desire to argue his constitutional issue and his obligation to provide due regard and deference to a prior ruling of the trial court with which he disagreed. Suggesting that Clark should have somehow done more in the face of a clear mandate from the trial court would, in my view, place Clark in an untenable, if not impossible, position.

## II. The Trial Court Erred in Refusing to Hear Clark's Motion to Suppress

As noted above, Clark timely filed his February 26, 2011 motion to suppress under Code § 19.2-266.2. The trial court ruled that it would not hold a hearing on the motion to suppress on the grounds that the case "ha[d] been pending for an inordinate length of time" and that the trial court should not "encourage *seriatim* filing of motions to suppress." In my view, with all due respect to the learned trial judge, and with due regard for the inherent ability of trial judges to manage their own dockets and cases, I would suggest that the trial court had no statutory basis to refuse to consider a timely-filed motion to suppress. Code § 19.2-266.2(B) provides that a motion to suppress "shall be filed and notice given to opposing counsel not later than seven days before trial in circuit court" and that "[a] hearing on all such motions or objections *shall be held* not later than three days prior to trial in circuit court . . . ." (Emphasis added). Accordingly, this language should be interpreted in this context of these very unusual circumstances to create a mandatory obligation upon the trial court to consider this timely-filed motion to suppress. See e.g., Upchurch v. Commonwealth, 31 Va. App. 48, 51, 521 S.E.2d 290, 291 (1999) ("When the word 'shall' appears in a statute, it is generally used in an imperative or mandatory sense." (citing Crawford v. Commonwealth, 23 Va. App. 661, 666, 479 S.E.2d 84, 87 (1996) (*en banc*)).[9] Because there was no statutory authorization for the trial court's refusal to hold a

---

[9] In addition, in the context of this case, I believe Clark's failure to explicitly request a hearing on his motion to suppress after the motion was filed is inconsequential. I find no published decisions in which a Virginia court has determined whether the onus falls on the moving party or the trial court to ensure a hearing on a motion to suppress no later than three days prior to trial, as required by Code § 19.2-266.2. Although unpublished persuasive authority

- 21 -

second hearing and rule on Clark's motion to suppress, I would hold that the trial court erred in failing to do so.

### III.  Harmless Error

Despite my view that the trial court erred in refusing to hold a hearing and rule on Clark's February 26, 2011 motion to suppress, I nevertheless concur in the result reached by the majority because the trial court's error was harmless.  The trial court's refusal to hold a hearing or rule on Clark's motion to suppress was, in effect, a denial of the motion.  Because, as a matter of law, Clark's motion to suppress the fruits of the search of his apartment on the grounds that the items seized were beyond the scope of the warrant would properly have been denied if heard by the trial court, I would hold that the trial court's effective denial of Clark's motion was harmless.

"When a federal constitutional error is involved, a reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt."  Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) (citing Chapman v. California, 386 U.S. 18, 24 (1967); Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78 (2000)).

First, officers searched Clark's vehicle with his consent.  "A consensual search is reasonable if the search is within the scope of the consent given."  Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860, 862 (1992) (citing United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992)).  Appellant does not argue that officers exceeded the scope of his consent

---

exists suggesting that the burden is upon the moving party to request the hearing, see Cooke v. Commonwealth, No. 1821-06-2, 2008 Va. App. LEXIS 208 (Apr. 29, 2008); Moody v. Commonwealth, No. 3183-02-1, 2003 Va. App. LEXIS 624 (Dec. 9, 2003), the instant case is distinguishable because the trial court here preemptively ruled that it would not hold a hearing on any further motions to suppress.  In light of this ruling, it would again elevate form over substance to require a moving party to explicitly request a hearing, despite the fact that the trial court had already ruled that no such hearing would take place.  Clark's desire for a hearing was clear, and, as he explained to the trial court, his failure to "push to have the date heard" was a result of the trial court's earlier ruling that it would not hold any more hearings on motions to suppress.

to search his vehicle. Therefore, even if papers seized from the vehicle were outside the scope of the warrant, officers were authorized to seize the papers based on the consensual nature of the search.

Moreover, even if the scales and baggies seized from Clark's apartment were beyond the scope of the warrant, their seizure was proper because the record clearly indicates that the items were in plain view. In reaching this determination, I consider "the entire record," including trial testimony, as instructed by Patterson v. Commonwealth, 17 Va. App. 644, 648, 440 S.E.2d 412, 415 (1994) (holding that "[o]n appeal, we consider the entire record in determining whether the trial court properly denied appellant's motion to suppress").

"The plain view doctrine provides that no reasonable expectation of privacy attaches to objects exposed to plain view. Thus, police observation of objects in plain view does not implicate the Fourth Amendment so long as the police are legitimately in the place where they viewed the objects." Gibson v. Commonwealth, 50 Va. App. 744, 749, 653 S.E.2d 626, 628 (2007) (citations omitted).

> [I]n order for a seizure to be permissible under the plain view
> doctrine, two requirements must be met: "(a) the officer must be
> lawfully in a position to view and seize the item, [and] (b) it must
> be immediately apparent to the officer that the item is evidence of
> a crime, contraband, or otherwise subject to seizure."

Conway v. Commonwealth, 12 Va. App. 711, 718, 407 S.E.2d 310, 314 (1991) (*en banc*) (alterations in original) (citing Stokes v. Commonwealth, 4 Va. App. 207, 209, 355 S.E.2d 611, 612 (1987)).

Here, officers were lawfully searching Clark's apartment for controlled substances pursuant to a valid warrant when they found one scale atop plastic storage containers in Clark's bedroom, another scale in a closet, and the baggies inside a bag on the bed in the bedroom. Because controlled substances could have been hidden in the closet or bag, the police were

- 23 -

authorized by the warrant to inspect the closet and bag.  See Blair v. Commonwealth, 225 Va. 483, 489, 303 S.E.2d 881, 886 (1983) (holding that the police, in searching for a sheet of coins, "could look into every part of the building and its hiding places, regardless of size").  Therefore, the officers were lawfully in Clark's apartment and lawfully inspected the bedroom, including the closet and bag, where the objectionable scales and baggies were found.

In addition, it was immediately apparent to the officers that the scales and baggies were evidence of a crime, contraband, or otherwise subject to seizure.

> The "immediately apparent" requirement equates to probable cause in the context of "plain view."  Texas v. Brown, 460 U.S. 730, 741-42, 103 S. Ct. 1535, 1542-43, 75 L. Ed. 2d 502 (1983) (plurality opinion).  "[P]robable cause is a flexible, common-sense standard . . . [which] merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be . . . useful as evidence of a crime."  Id.

Commonwealth v. Ramey, 19 Va. App. 300, 304, 450 S.E.2d 775, 777 (1994) (alterations in original).  Officer Johnson testified that he discovered one scale in the closet and the baggies in the bag immediately upon inspection of the closet and bag.  Given that the warrant authorized a search for controlled substances, and scales and baggies are associated with the distribution of controlled substances, it was immediately apparent that the scales and baggies were evidence of a crime:  possession of a controlled substance with the intent to distribute.

Because the officers were lawfully in a position to view and seize the contested items, and it was immediately apparent to the officer that the contested items were evidence of a crime, the plain view doctrine justified the seizure of the baggies and scales.  Thus, Clark's third motion to suppress based upon the argument that the search exceeded the scope of the warrant would have properly been denied had the trial court considered it.  As a result, the trial court's failure to consider Clark's third motion to suppress, which in effect resulted in a denial of the motion, was

- 24 -

harmless error.  Because I would find the trial court's error harmless, I concur in the result reached by the majority.