UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia


JORGE ALFREDO FERNANDEZ-HERNANDEZ

                                                MEMORANDUM OPINION* BY
v.        Record No. 1168-22-2                  JUDGE DOMINIQUE A. CALLINS
                                                MARCH 26, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Jorge Alfredo Fernandez-Hernandez of transporting cocaine into

the Commonwealth with intent to distribute, possession of cocaine with intent to distribute,

possession of fentanyl with intent to distribute, and conspiracy. On appeal, Fernandez-Hernandez

challenges the sufficiency of the evidence to sustain his convictions. He further contends that venue

for his conspiracy charge did not properly lie in Chesterfield County. Finding no error, we affirm

the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

I. The Drug Trafficking Investigation

In January 2019, Chesterfield police began investigating Fernandez-Hernandez for suspected drug trafficking. They executed a search warrant at an apartment and found a cell phone containing various phone numbers, all with an Arizona area code, saved under the nickname "Smurf." Police later identified "Smurf" as Fernandez-Hernandez. Police began surveilling Fernandez-Hernandez, as well as an individual whose number appeared in Fernandez-Hernandez's phone records—Irvin Shury, a "tractor trailer driver from Jacksonville, Florida."

A few months later, police surveilled Fernandez-Hernandez drive to an apartment complex in Chesterfield County and then, afterward, meet Shury at a truck stop. Shury retrieved a blue duffle bag from his tractor trailer, placed it in the front passenger seat of Fernandez-Hernandez's vehicle, and Fernandez-Hernandez drove away.

Three months following the truck stop meet-up, police surveilled Fernandez-Hernandez exit the same apartment and drive to an adjacent "breezeway" where an individual handed Fernandez-Hernandez a shoebox. Later the same day, Fernandez-Hernandez drove to a hotel parking lot and parked beside Shury's tractor trailer. Shury removed a blue duffle bag from his truck and gave it to Fernandez-Hernandez. Fernandez-Hernandez then gave Shury a shoebox. Following the exchange, Fernandez-Hernandez drove away, returning to the Chesterfield apartment. Fernandez-Hernandez carried the duffle bag into the apartment.

---

[1] "On appeal, we view the record in the light most favorable to the Commonwealth because it was the prevailing party below." *Delp v. Commonwealth*, 72 Va. App. 227, 230 (2020). In so doing, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).

Two months later, in November 2019, Fernandez-Hernandez and Shury were seen together in Tucson, Arizona.

## II.  Fernandez-Hernandez's Arrest

In December 2019, a DEA agent observed Shury drive his tractor trailer in Danville, Virginia.  The agent continuously followed Shury for two hours northward to a truck stop in Sussex County, Virginia.  Fernandez-Hernandez arrived at the truck stop, parked beside Shury's truck, and handed Shury a white box.  Shury placed the box in his truck and removed a blue duffle bag.  Shury placed the duffle bag in Fernandez-Hernandez's vehicle, and then Fernandez-Hernandez, who was the passenger in the vehicle, rode away.

Once Fernandez-Hernandez left, police arrested Shury at the truck stop and searched the tractor trailer.  In the truck, police found a "bill of lading" that indicated a shipment of "21 crates" from Kingman, Arizona to Danville, Virginia.  The trailer did not contain any freight.  Noted on the invoice was a "pickup date" of December 2, 2019, and a "delivery date" of December 6, 2019.

Meanwhile, some officers had followed Fernandez-Hernandez from the truck stop.  They observed Fernandez-Hernandez's vehicle stop at a convenience store.  The driver went into the convenience store while Fernandez-Hernandez remained in the vehicle with the duffle bag.  When the driver returned, the police followed as the vehicle then drove northward through Chesterfield County until it parked outside an apartment in Henrico County.

Once stopped, police descended upon the vehicle and arrested both Fernandez-Hernandez and the driver.  A subsequent search yielded $1,088 from Fernandez-Hernandez's pocket and three cell phones and a blue duffle bag from inside the vehicle.  The duffle bag contained five "blocks" of suspected cocaine each embossed with symbols, 10,000 blue pills divided into ten plastic bags, and pill "packaging materials."

### III. The Henrico Apartment Search

After Fernandez-Hernandez's arrest, police searched the Henrico apartment. It contained almost no food, but police found car keys, cell phones, cash, and two bookbags in the living room. The two bags contained marijuana and a shoebox containing $94,009. A safe inside a vent in an HVAC unit concealed $73,700 and three "blocks" of suspected cocaine, some of which were packaged in material bearing a "dragon style logo." The apartment further contained two money order receipts, a blender containing suspected cocaine residue, several hotel key cards, a knotted plastic bag containing suspected cocaine, and documents that contained Fernandez-Hernandez's name.

### IV. Procedural History

#### A. *Trial Testimony*

The trial court qualified Jacob Easter as an expert in analyzing controlled substances. Easter testified that he had tested the five blocks of suspected cocaine found in the duffle bag. He determined that they had a total net weight of 4,989.88 grams and were "72.7% pure" cocaine, a Schedule II controlled substance. Easter also tested the blocks found inside the safe in the Henrico apartment and the contents of the knotted plastic bag: the former contained about 4,039.68 grams of 83.2% pure cocaine; the latter, about 913.1 grams of 70.7% pure cocaine. Additionally, Easter tested "a random sampling of five" of the approximately 10,000 pills found in the duffle bag and confirmed that they contained fentanyl, a Schedule II controlled substance. Easter explained that although he did not test every pill, the pills "all look[ed] the same."[2] Each pill had been colored blue and stamped with the symbol, "M-30," which were "physical markings . . . consistent with a Schedule II pharmaceutical preparation containing Oxycodone."

---

[2] The Commonwealth introduced photographs of the pills into evidence at trial.

Chesterfield Police Detective Nathan Necolettos qualified as an expert in the packaging, distribution, manufacturing, and trafficking of controlled substances. Detective Necolettos testified that the totality of the circumstances surrounding the investigation of Fernandez-Hernandez— including the large quantity and the quality of the cocaine and fentanyl police seized—was "not consistent with personal use." Detective Necolettos explained that in Chesterfield, the distribution of "wholesale amounts" of cocaine and fentanyl is "dominated by Mexican drug trafficking organizations" that have established "distribution hubs in the southwest border area" of the United States, including Texas, California, and Arizona. After establishing a high-income-earning "distribution point" in the United States, these traffickers often set up a local "stash house" and assign to each house a caretaker to collect money and a "coordinator" to oversee business operations conducted from the house.

Detective Necolettos testified that "high-level" cocaine distributors typically package cocaine in 1 kilogram "blocks" that contain "70-80%" pure cocaine. Mexican drug trafficking organizations usually manufacture the cocaine blocks in "South American countries such as Colombia or Peru" and emboss them with symbols to indicate their "high quality." The embossments on the cocaine blocks found in the duffle bag and the safe in the Henrico apartment, and the "dragon style logo" on some of the packaging materials, were consistent with those used by Mexican drug trafficking organizations. A kilogram of cocaine was worth about $40,000, and the total amount of cocaine police seized had a wholesale value of approximately $420,000.

In contrast, fentanyl is "usually produced in China" and "transported to Mexico," where drug traffickers compress the powder into pills and send them to distribution points in the United States. Drug traffickers commonly disguise fentanyl powder as "legitimate prescription [oxycodone] pills" by compressing it and labeling it "M-30." A single fentanyl pill typically sold

for $20, and the wholesale value of the fentanyl pills found in the duffle bag was $200,000. Additionally, the average fentanyl consumer would purchase no more than five pills.

Drug traffickers commonly transport illicit drugs using tractor trailers because the trucks conceal and mask the contraband as "legitimate cargo." Detective Necolettos explained that drug traffickers usually bundle large sums of cash earned from drug sales using rubber bands and transport the cash in shoe boxes. Traffickers also use multiple cell phones to "compartmentalize who they call," notebook ledgers to record drug sales, and blenders to "dilute" cocaine with "additives" and "cutting agents." Detective Necolettos concluded that the bundles of large sums of cash, multiple cell phones, two notebooks containing drug transaction records, and the blender containing suspected drug residue found during the search of the Henrico apartment and Fernandez-Hernandez's vehicle were indicia of drug distribution. Detective Necolettos further opined that those circumstances, combined with the quantity and quality of the cocaine and fentanyl police seized, were "not consistent with personal use."

B. *Fernandez-Hernandez's Motion to Strike and Appeal*

Fernandez-Hernandez moved to strike the Commonwealth's evidence. He argued that the evidence failed to establish the trial court's "jurisdiction on a venue basis" over the conspiracy charge because he did not commit any criminal act in Chesterfield County. He further argued that the evidence was insufficient to prove the drug transportation charge because no evidence proved that the cocaine "originated outside" of Virginia or that he "was involved" in transporting it into the state. Fernandez-Hernandez also asserted that the evidence was insufficient to prove that he constructively possessed the cocaine in the duffle bag or that he intended to distribute the fentanyl pills. The trial court denied the motion. Fernandez-Hernandez rested his case without putting on any evidence.

Following closing arguments, the trial court found that the apartment in Henrico County was a drug distribution "hub," based on the drugs, cash, and other indicia of distribution police seized there. Additionally, based on the "logo markings on some of the packages," the trial court found that the cocaine came from outside the Commonwealth. Accordingly, the trial court convicted Fernandez-Hernandez of transporting at least one ounce of cocaine into the Commonwealth with intent to distribute it, in violation of Code § 18.2-248.01, conspiracy to distribute at least five kilograms of cocaine, in violation of Code §§ 18.2-248 and -256, possession with intent to distribute at least five kilograms of cocaine, in violation of Code § 18.2-248, and possession with intent to distribute a Schedule I or Schedule II controlled substance (fentanyl), in violation of Code § 18.2-248. Fernandez-Hernandez appeals all his convictions.

ANALYSIS

I. Sufficiency of Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "[W]e consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below. 'We also accord the Commonwealth the benefit of

all inferences fairly deducible from the evidence.'" *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008) (citations omitted) (quoting *Riner v. Commonwealth*, 268 Va. 296, 303 (2004)).

Fernandez-Hernandez argues that the evidence was insufficient to support his convictions. We disagree, finding that the evidence was sufficient to convict on all counts.

A. *Transporting a Controlled Substance into the Commonwealth*

Fernandez-Hernandez asserts that the Commonwealth's evidence was insufficient to convict him of transporting a controlled substance, cocaine, into the Commonwealth in violation of Code § 18.2-248.01.

"[I]t is unlawful for any person to transport into the Commonwealth by any means with intent to sell or distribute one ounce or more of cocaine, coca leaves or any salt, compound, derivative or preparation thereof as described in Schedule II of the Drug Control Act." Code § 18.2-248.01. "'The plain and obvious meaning of [Code § 18.2-248.01] is to prohibit the . . . transportation of illegal substances [into] Virginia by a person whose intent is to distribute' those substances." *Washington v. Commonwealth*, 43 Va. App. 291, 305-06 (2004) (alterations in original) (quoting *Seke v. Commonwealth*, 24 Va. App. 318, 323 (1997)). An individual violates Code § 18.2-248.01 "the moment a person transporting illegal substances penetrates the borders of the Commonwealth." *Kelly v. Commonwealth*, 41 Va. App. 250, 258 (2003) (en banc) (quoting *Seke*, 24 Va. App. at 325). The prosecution may rely upon circumstantial evidence to show transportation of an illegal substance into the Commonwealth. *Id.* at 259 (affirming appellant's conviction when the Commonwealth presented "entirely circumstantial" evidence relating to the marijuana's transportation into Virginia and appellant's role in the transportation).[3] Fernandez-Hernandez argues that the evidence fails to establish that (1) the

---

[3] If the Commonwealth relies on circumstantial evidence, then the reasonable doubt standard requires proof "sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983). Yet, "this principle[] 'does

- 8 -

cocaine originated outside of the Commonwealth or that (2) he participated in bringing the cocaine into the Commonwealth.  On both points, Fernandez-Hernandez is wrong.

1.  The evidence supports a finding that the cocaine originated outside of Virginia.

Detective Necolettos, an expert in the manufacturing, distribution, and trafficking of controlled substances, testified that the distribution of cocaine in Chesterfield is "dominated by Mexican drug trafficking organizations" whose established distribution hubs are located in "the southwestern border area" of the United States, including Arizona, California, and Texas. Detective Necolettos also explained that such organizations usually manufacture the cocaine blocks in South America, where they typically emboss a "dragon style logo" to indicate the purity of the cocaine.  Coincidentally, such embossing also indicates the origin of the manufactured cocaine blocks.  The cocaine that the police found in the duffle bag bore the "dragon style logo," reflecting its high quality and "that it's original from out of the country." Additionally, police found a bill of lading in Shury's tractor trailer indicating that he traveled to Virginia from Arizona.

Considering this evidence in the light most favorable to the Commonwealth, a rational fact finder could conclude that the embossed cocaine blocks originated outside of Virginia.[4]

---

not add to the burden of proof placed upon the Commonwealth'" as it is "'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'"  *Kelly*, 41 Va. App. at 258 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

[4] Fernandez-Hernandez notes that "[i]t is not enough to simply suggest that [the controlled substance] initially *originate* outside of the Commonwealth."  We agree.  Code § 18.2-248.01 requires proof of both origination outside of the Commonwealth and the defendant's participation in transporting the controlled substance into the Commonwealth.  As Fernandez-Hernandez presents his two arguments as alternative theories in his first assignment of error, we discuss both.

2. The evidence supports a finding that Fernandez-Hernandez participated in transporting the cocaine into Virginia.

Fernandez-Hernandez seems to suggest that because "no specific evidence" shows that he came into the Commonwealth with the cocaine, the evidence was therefore insufficient to demonstrate that he participated in the cocaine's transportation. This view is flawed. Additionally, Fernandez-Hernandez ignores the breadth of evidence the Commonwealth presented. *See Kelly*, 41 Va. App. at 258 (stating that there is no distinction between value given to direct or circumstantial evidence; the fact finder may "consider all of the evidence, without distinction, in reaching its determination" (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003))).

"A principal in the first degree is the actual perpetrator of the crime." *Thomas v. Commonwealth*, 279 Va. 131, 156 (2010) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005)). A "principal in the second degree . . . is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." *Id.* (quoting *Muhammad*, 269 Va. at 482). "[A] person who participates as a principal in the second degree in transporting into the Commonwealth with intent to distribute any of the controlled substances listed in Code § 18.2-248.01 may be convicted under that statute as if a principal in the first degree." *Washington*, 43 Va. App. at 306.

To convict a person as a principal in the second degree under Code § 18.2-248.01, the Commonwealth must demonstrate that the person (1) was "'present, aiding and abetting, by helping some way in the commission of the crime'" and (2) "shared the criminal intent" of the principal or "'committed some overt act in furtherance of the offense.'" *Id.* (first quoting *Ramsey v. Commonwealth*, 2 Va. App. 265, 269 (1986); and then quoting *Sutton v. Commonwealth*, 228 Va. 654, 666 (1985)). An accused need not be physically present at the commission of the crime to be convicted as a principal in the second degree. *See Sutton*, 228 Va.

at 667 (stating that "presence need not be a strict, actual, immediate presence" but "may be a constructive presence" (quoting *Dull v. Commonwealth*, 66 Va. (25 Gratt.) 965, 977 (1875))).

Under these principles, we have found that an appellant acted as a principal in the second degree to transporting illegal drugs into the Commonwealth by accepting delivery of the drugs, even though he was "not actually present at the commission of the crime when the parcel passed into Virginia." *Washington*, 43 Va. App. at 307. We determined that in interpreting the word "transportation" in cases involving the illegal transportation of alcohol, the Supreme Court has held that "transportation begins when the [contraband is] loaded into the car for illegal transportation and ends only when [it is] removed therefrom. *The loading and unloading are necessarily a part of the transportation.*" *Id.* (quoting *Chrysler Roadster v. Commonwealth*, 152 Va. 508, 514 (1929)). We have also held that an appellant who "acted to ensure the successful transportation" of the drugs into the Commonwealth participated in the transportation of drugs into the Commonwealth by serving as a lookout. *Merritt v. Commonwealth*, 57 Va. App. 542, 558 (2011) (en banc).

The Commonwealth presented evidence sufficient to show that Fernandez-Hernandez assisted Shury in transporting the cocaine into the Commonwealth. Consistent with our jurisprudence, we hold that Fernandez-Hernandez did not need to be physically present at the border when the cocaine passed into the Commonwealth to be convicted pursuant to Code § 18.2-248.01.

Fernandez-Hernandez, in directing Shury to place the duffle bag into the vehicle in which he was traveling, accepted delivery of the drugs.[5] *Washington*, 43 Va. App. at 307 (holding that

---

[5] At trial, the Commonwealth introduced portions of a police surveillance video which showed Shury placing the duffle bag in the vehicle after Fernandez-Hernandez opened the rear passenger door and pointed inside. On appellate review, we "view video evidence not to determine what we think happened, but for the limited purpose of determining whether any

appellant "accepting delivery" of marijuana "was part of the [marijuana]'s transportation"). He then caused the duffle bag to be transported to the Henrico apartment, even remaining in the vehicle with the bag when the driver stopped briefly at a convenience store. The condition of the apartment—including the presence of more cocaine, large sums of cash, and multiple cell phones—was consistent with those of "stash houses" that drug trafficking organizations typically use to distribute cocaine. Further, police saw Shury and Fernandez-Hernandez together, both in Chesterfield and in Arizona.[6] They were seen together just ten days before Shury's arrest in Virginia. A reasonable fact finder could conclude from the evidence, including circumstantial evidence, that Fernandez-Hernandez assisted in the successful transportation of the cocaine into the Commonwealth.

B. *Conspiracy*

Fernandez-Hernandez contends that the evidence failed to prove he conspired to distribute cocaine. He argues that the Commonwealth did not offer testimony nor any communications from a co-conspirator to "establish any plan to distribute drugs, or to elaborate on what role, if any, [Fernandez-Hernandez] had in the alleged scheme."[7]

Conspiracy is defined as "an agreement between two or more persons by some concerted action to commit an offense." *Speller v. Commonwealth*, 69 Va. App. 378, 389 (2018) (quoting *Wright v. Commonwealth*, 224 Va. 502, 505 (1982)). "[M]ost conspiracies are 'clandestine in

---

rational factfinder could have viewed it as the trial court did." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022).

[6] We agree with Fernandez-Hernandez that merely having an Arizona identification does not preclude one of any legitimate "ties" with the Commonwealth. Yet, the trial court was "free to consider" Fernandez-Hernandez's visits to the Commonwealth as circumstantial evidence of drug transportation. *See Kelly*, 41 Va. App. at 584.

[7] Fernandez-Hernandez also argues that there was no evidence that he possessed the duffle bag containing the cocaine. Given our conclusion that the evidence is sufficient to prove possession, we find that this argument has no merit.

nature,'" and "[i]t is a rare case where any 'formal agreement among alleged conspirators' can be established." *Johnson v. Commonwealth*, 58 Va. App. 625, 636 (2011) (quoting *James v. Commonwealth*, 53 Va. App. 671, 678 (2009)). Thus, "[t]he Commonwealth may prove the existence of a conspiratorial agreement by circumstantial evidence and need not prove an explicit agreement." *Speller*, 69 Va. App. at 389 (quoting *Gray v. Commonwealth*, 30 Va. App. 725, 736 (1999), *aff'd*, 260 Va. 675 (2000)). "Where it is shown that the defendants by their acts pursued the same object, one performing one part and the other performing another part so as to complete it or with a view to its attainment," a trial court may conclude that "they were engaged in a conspiracy to effect that object." *Amato v. Commonwealth*, 3 Va. App. 544, 552 (1987) (quoting 16 Am. Jur. 2d *Conspiracy* § 42 (1979)).

The evidence established that Shury transported cocaine blocks in a duffle bag into Virginia. Fernandez-Hernandez assisted Shury by accepting the duffle bag containing the cocaine blocks and transporting the bag to an apartment in Henrico for further distribution. The circumstances established by the evidence support a finding of conspiracy between Fernandez-Hernandez and Shury. *See Speller*, 69 Va. App. at 389. The Commonwealth was not required to prove an express, formal agreement to support a conspiracy conviction.

C.  *Possession with Intent to Distribute Fentanyl*[8]

Fernandez-Hernandez argues that the evidence failed to prove that he intended to distribute the fentanyl pills in the duffle bag because the forensic analyst only tested five of the approximately 10,000 pills.  Fernandez-Hernandez contends that this evidence only shows that he possessed five "fentanyl laced pills," a quantity "consistent with personal use."

"[W]hen a portion of an unknown substance is tested and confirmed to be a controlled substance, it is not unreasonable for the fact finder to infer that the entire amount is the same controlled substance if the totality of the circumstances supports that inference." *Williams v. Commonwealth*, 52 Va. App. 194, 204 (2008), *aff'd*, 278 Va. 190 (2009).  In this case, the forensic analyst tested five pills randomly selected from the duffle bag and determined that they contained fentanyl.  The pills all looked the same, and the Commonwealth introduced photos of the pills.  It was "not unreasonable" for the fact finder in this case to infer that the remaining approximately 10,000 pills likewise contained fentanyl.

The evidence additionally supported that Fernandez-Hernandez intended to distribute the fentanyl pills.  "Intent is the purpose formed in a person's mind and may, like any other fact, be

---

[8] Fernandez-Hernandez additionally assigns error to his possession of cocaine with intent to distribute conviction.  Fernandez-Hernandez argues that the evidence was insufficient to show that he "knew the nature or character of the substance in question or that he exercised dominion and control over it."  Because he was "merely a passenger" in the vehicle, Fernandez-Hernandez contends that he "did not have actual possession of the drugs."  We find this argument without merit.

Possession of drugs "may be actual or constructive." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018).  Here, ample evidence demonstrated that Fernandez-Hernandez constructively possessed the cocaine.  When the driver of the car went into the convenience store, Fernandez-Hernandez remained in the car with the duffle bag, suggesting he knew the value of its contents. *See Ervin v. Commonwealth*, 57 Va. App. 495, 517 (2011) (en banc) (recognizing that drugs are valuable commodities that are "unlikely to be abandoned").  Additionally, the bag contained Fernandez-Hernandez's personal documents, Fernandez-Hernandez owned the car, he was present when the cocaine was placed in the car, and he sat in proximity to the duffle bag.  Taken together, a rational fact finder could find that Fernandez-Hernandez possessed the cocaine with intent to distribute.

shown by circumstances." *Secret*, 296 Va. at 228 (quoting *Commonwealth v. Herring*, 288 Va. 59, 75 (2014)). "Absent a direct admission by the defendant, intent to distribute must necessarily be proved by circumstantial evidence." *Holloway v. Commonwealth*, 57 Va. App. 658, 666 (2011) (en banc). "When the proof of intent to distribute narcotics rests upon circumstantial evidence . . . quantity, alone, may be sufficient to establish such intent if it is greater than the supply ordinarily possessed for one's personal use." *Dukes v. Commonwealth*, 227 Va. 119, 122 (1984).

"Among the circumstances that tend to prove an intent to distribute are 'the quantity of the drugs seized, the manner in which they are packaged, and the presence of . . . equipment related to drug distribution.'" *Askew v. Commonwealth*, 40 Va. App. 104, 108 (2003) (alteration in original) (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). Additionally, "the unique, simultaneous possession of a combination of disparate drugs can be indicative of the possessor's intent to distribute." *Scott v. Commonwealth*, 55 Va. App. 166, 174 (2009) (en banc).

The duffle bag contained about 10,000 pills and 11 kilograms of cocaine. Detective Necolettos opined that the average fentanyl consumer would purchase at most five pills and the wholesale value of the 10,000 pills was $200,000. Thus, here, "quantity, alone, may be sufficient to establish such intent" as 10,000 pills is "greater than the supply ordinarily possessed for one's personal use." *Dukes*, 227 Va. at 122. Nonetheless, the Commonwealth produced additional evidence aside from quantity. The pills were packaged in ten separate plastic bags and had been disguised as oxycodone tablets. The duffle bag also contained additional pill "packaging materials." Considering all the evidence, the trial court was not plainly wrong nor without evidence in determining that Fernandez-Hernandez intended to distribute the fentanyl.

## II. Venue

Fernandez-Hernandez contends that venue for the conspiracy charge did not properly lie in Chesterfield County because he met Shury in Sussex County and was arrested in Henrico

County; further, police conducted a vehicle search and an apartment search in Henrico County. Thus, he argues that the evidence "failed to show that any part of the [alleged] conspiracy . . . was planned in Chesterfield" or that any act in furtherance of the conspiracy occurred in Chesterfield. We disagree.

"Except as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed." Code § 19.2-244. In a criminal case, the Commonwealth bears the burden of establishing venue. *Bonner v. Commonwealth*, 62 Va. App. 206, 210 (2013) (en banc). "Proof of venue 'is not part of the crime.'" *Id.* (quoting *Morris v. Commonwealth*, 51 Va. App. 459, 469 (2008)). Because venue is not a substantive element of a crime, the Commonwealth need only "produce evidence sufficient to give rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court." *Id.* at 211 (quoting *Cheng v. Commonwealth*, 240 Va. 26, 36 (1990)). Traveling through a jurisdiction with a controlled substance is sufficient to establish venue for prosecution of possession of a controlled substance. *See Morris*, 51 Va. App. at 467-68 (holding that because possession of illegal narcotics "continues during the entire time one is in possession of the items," venue can be properly established in a jurisdiction through which a person is traveling).

Conspiring to distribute a controlled substance is a "continuing offense" and, therefore, venue "is proper at the places where the agreement was made or where any act in furtherance of the conspiracy occurs." *Zuniga v. Commonwealth*, 7 Va. App. 523, 532 (1988). "While the object of the conspiracy may be the distribution of [a controlled substance], '[e]ach member of a conspiracy is responsible for the acts of others in furtherance of the conspiracy, and all conspirators, even those without knowledge of the particular act, may be tried where any of those acts are performed.'" *Kelso v. Commonwealth*, 57 Va. App. 30, 40 (2010) (second alteration in original) (quoting *Brown v. Commonwealth*, 10 Va. App. 73, 81 (1990)), *aff'd*, 282 Va. 134 (2011).

Here, the evidence established that Fernandez-Hernandez conspired to distribute the cocaine in Chesterfield County. One of Fernandez-Hernandez's cell phones was found in Chesterfield County. Later, Fernandez-Hernandez and Shury met at an apartment in Chesterfield County. Approximately four months later, Fernandez-Hernandez visited the same apartment in Chesterfield County and exchanged a box with an unknown individual. Fernandez-Hernandez then gave the box to Shury.

Additionally, Fernandez-Hernandez transported the cocaine through Chesterfield County. Fernandez-Hernandez accepted the drugs from Shury at a truck stop in Sussex County and delivered them to an apartment in Henrico County. Thus, acting as a conspirator, Fernandez-Hernandez performed various "act[s] in furtherance of the conspiracy" within Chesterfield County and, therefore, "venue . . . [wa]s proper." *Zuniga*, 7 Va. App. at 532. In sum, the Commonwealth "produce[d] evidence *sufficient* to give rise to a '*strong presumption*'" that Fernandez-Hernandez committed the offense within Chesterfield County's jurisdiction. *Bonner*, 62 Va. App. at 211 (emphases added) (quoting *Cheng*, 240 Va. at 36).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*